### RAILROAD COMPANY v. HAMERSLEY.

1. The provision of the act of the General Assembly of Connecticut, 1866 (*infra*, p. 2), relative to the abandonment of railroad stations, whilst it authorizes the railroad commissioners to consent, or to refuse to consent, to the abandonment of an existing station, confers upon them no authority to bind the State by contract not to exercise its legislative power touching the establishment of such stations.
2. The act entitled "An Act establishing a depot at Plantsville," approved July 15, 1875 (*infra*, p. 3), does not impair the obligation of any contract between that State and the New Haven and Northampton Company.

ERROR to the Supreme Court of the State of Connecticut. The facts are stated in the opinion of the court.

*Mr. R. D. Hubbard* and *Mr. C. E. Perkins* for the plaintiff in error.

*Mr. William Hamersley* and *Mr. John R. Buck*, contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The New Haven and Northampton Company is a Connecticut corporation, authorized to construct and operate a railroad from New Haven, through the town of Southington, to the Massachusetts State line. It has full power to erect and maintain toll-houses and other buildings for the accommodation of its concerns, as it may deem suitable for its interest; but its

charter may " be altered, amended, or repealed at the pleasure of the General Assembly." In 1848, after the road was built, three stations were established in the town of Southington, named respectively Southington, Plantsville, and Hitchcock's, at which trains stopped for freight and passengers.

In 1866, the General Assembly of the State passed a statute which contained the following provision in respect to the abandonment of railroad stations : —

"No railroad company shall abandon any station on its road in this State after the same has been established for twelve months, except by the approval of the railroad commissioners, given after a public hearing held at such station, notice of which shall be posted conspicuously in said station for one month prior to the hearing."

In November, 1873, the company became desirous of abandoning one or more of its stations in Southington, and for that purpose presented a petition to the railroad commissioners, representing that two stations properly located would be ample for the public convenience, and asking that the matter might be inquired into, and that the Southington or Plantsville station, or both, might be discontinued, and two stations, and only two, located in the town, where the common good of all parties in interest would be most promoted. The requisite notice was given, and the commissioners having heard the application, on the 3d of February, 1874, made the following order : —

" After a careful and full examination of the locality and business surroundings of the present located stations, and an extended hearing of all the appearing parties in interest, with their evidence and arguments of counsel, the railroad commissioners do find and approve, and do hereby order, that the New Haven and Northampton Company may discontinue and abandon the present stations of Southington and Plantsville, as at present located, under and by complying with the following provisions and conditions, viz. : —

" The New Haven and Northampton Company shall provide and erect a passenger station house near their new freight depot, as shown on the map exhibited and submitted, and after and in compliance with the plans and profiles also submitted for said passenger station building, and provide suitable and

convenient approaches thereto; also suitable, convenient, and easy approaches to their new freight depot; all of which shall be done to the acceptance of the railroad commissioners. Said company shall also continue the same facilities for receiving and shipping freight by the car-load and unbroken, as at present enjoyed, to each and all of the parties who patronize their railroad by receiving and shipping freight thereby."

Before this time the company had bought the ground and erected buildings adapted to freight business at the place indicated in the order. It afterwards, at an expense of $10,000, put up a building for passenger purposes, as required by the commissioners. This being acceptable to the commissioners, the stations of Southington and Plantsville were abandoned by the company, and both passenger and freight trains stopped at the new place only.

The succeeding legislature passed an act, approved July 15, 1875, "establishing a depot at Plantsville." It is as follows:—

"SECT. 1. That if, at any time within six months after the passage of this act, any of the petitioners and others who may act with them for that purpose shall erect at Plantsville, contiguous to the railroad, a depot building, and convey the same, with the land on which it is situated, and the land reasonably necessary for the approaches thereto by the railroad trains, to the New Haven and Northampton Company, to be used for railroad purposes, it shall thereupon become the duty of said company, and it is hereby ordered, to stop at such depot thereafter its regular passenger and freight trains passing over said railroad, for the purpose of receiving and discharging passengers and freight. And all the provisions of the Revised Statutes applicable to railroad depots and stations shall be applicable to said depot in the same manner as though said depot had been erected and established by said company.

"SECT. 2. Said order may be enforced by *mandamus* by the attorney for the State for the county of Hartford, or at the relation of any inhabitant of the town of Southington, in said county, and the charter of the New Haven and Northampton Company is hereby amended according to the provisions of this act."

The petitioners named complied with the provisions of the act, and, having tendered the company a conveyance of suitable depot grounds and buildings at Plantsville, demanded that

the regular passenger and freight trains running on the road, be stopped there. This the company refused to do, and the attorney for the State for the county of Hartford now seeks by *mandamus* to enforce the law. The court below gave judgment against the company; holding, among other things, that the act of 1875 did not impair the obligation of any contract rights which the company had acquired from the State. Upon this ground the case has been brought here by writ of error.

It was conceded in the argument that there is nothing in the charter to prevent the State from passing the law complained of. Confessedly the power of amendment which was reserved meets this part of the case; but it is claimed that by the action of the railroad commissioners the State has become bound by a contract not to exercise its legislative power so as to require the establishment of a depot at Plantsville.

As it seems to us, the court of errors of the State took the right view of the statute under which the commissioners acted, when they said, in *State of Connecticut* v. *New Haven & Northampton Co.* (37 Conn. 153, 163), that its object was " to prevent railroad companies from arbitrarily changing their places of business on the road, to the prejudice of those who, relying on the permanency of such places, shape their business accordingly." The powers of the commissioners, as agents of the State, in this particular, are confined to such as are necessary for the accomplishment of that object. They may, after a public hearing, approve of, that is to say, give the assent of the State to, the abandonment of a station which has been established twelve months or more; and that is all they can do. They may, as was held in *State* v. *New Haven & Northampton Co.* (42 id. 56), direct that their approval take effect only when the company shall have provided suitable accommodations for the public at some other place; but that is only a conditional approval of the abandonment. When the new accommodations have been provided and the old station abandoned, nothing more has been accomplished, so far as the company is concerned, than a lawful abandonment of an old place of business. The powers of the State over the charter remain just as they were before. Until the act of 1866 the company could abandon its stations at will, and the State by charter amendment, or even

by a general law, might require their restoration. After that act the power of abandonment by the company was restricted, but the State retained all its old authority. The commissioners were given no power to contract for the State or the public. All they could do was to say yes or no to a simple request by the company for leave to abandon an old station. If they said yes, the abandonment might be made; if no, the station must be continued. In this case the commissioners said, "Yes, when the new accommodations are furnished." The new accommodations were furnished, and the station was abandoned accordingly. Such, in the case last cited, was the view which the court of errors took of what had been done, and we think it is correct. The commissioners entered into no agreement with the company. They simply said, complete your proposed accommodations at the new station, and we, for the State, will assent to your abandonment of the old one. It follows that the new law impaired no contract obligation of the State, and the judgment of the court of errors is consequently                                              *Affirmed.*