In the Matter of the Petition of the THIRD AVENUE RAILROAD COMPANY for a Writ of Mandamus.

The provision of the act of 1889, in reference to street surface railroads (§ 12, chap. 531, Laws of 1889), authorizing such a road, upon obtaining the approval of the state board of railroad commissioners and the consent of the property owners as specified, to operate its road "by any

power other than locomotive steam power instead of by animal or horse power," confers no substantial franchise to conduct or operate the road, but is simply a regulating act.

The powers and franchises of street railroad corporations, existing prior to January 1, 1875, may be regulated without violating the provision of the State Constitution (Art. 3, § 18), which went into effect on that day, prohibiting the passage of a law authorizing the construction of a street railroad, except upon condition that the consent of adjoining property holders and the local authorities shall be first obtained. Such regulation may be by enlarging, as well as restricting, their powers.

The manner in which an existing franchise to operate a railroad may be exercised is matter of regulation.

The petitioner, a street railroad corporation, was duly organized, had constructed its road, in the city of New York, and was operating it by horse power, prior to 1875; after the passage of said act of 1889, it obtained the approval and consent required thereby for the substitution and introduction of the cable system for moving its cars. The commissioner of public works refused to give his consent and to issue a permit, on the ground that, under said constitutional provision, the change could not be lawfully made without the consent of the local authorities. *Held*, untenable; and that the petitioner was entitled to a writ of mandamus to compel said commissioner to issue a permit.

*It seems*, the legislature cannot, without the consent of the local authorities, give to an existing street railroad company authority to substantially construct or operate a new road, or make the road, in its construction and operation, a different one from what it was before.

*In re Third Ave. R. R. Co.* (56 Hun, 537), reversed.

(Argued June 2, 1890; decided June 17, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, made May 9, 1890, which affirmed an order of Special Term denying an application for a mandamus.

The facts, so far as material, are stated in the opinion.

*Edward Lauterbach* for appellant. The Constitution of New York, article 3, section 18, does not forbid modifications, either in the structure or motive power of "street railroads," authorized by general law, after they have been completed and are in operation. (*In re G. E. R. Co.*, 70 N. Y. 361, 369; *In re K. C. E. R. Co.*, 82 id. 95; *In re N. Y. E. R. R. Co.*, 70 id. 327; *In re U. E. R. R. Co.*, 112 id. 61; *Com-*

*monwealth* v. *Temple*, 14 Gray, 69, 76; *Henshaw* v. *Foster*, 9 Pick. 312, 316; *Houseman* v. *Comm.*, 100 Penn. St. 222, 232; *People* v. *Fancher*, 50 N. Y. 288; *Arcade Case*, 113 id. 113.) Chapter 531 of the Laws of 1889 does not authorize the construction or operation of a street railroad, but only grants easements, which are not within any constitutional inhibition, when created by general law. (*People* v. *Newton*, 112 N. Y. 396; *In re U. E. R. R. Co.*, Id. 61; *Ogden* v. *Saunders*, 12 Wheat. 270; *In re N. Y. E. R. R. Co.*, 70 N. Y. 342.) The clause of the Constitution under consideration involves a grant of power to the local authorities in deroga-tion of the power of the legislature and should for that reason be strictly construed. (*People* v. *Draper*, 15 N. Y. 532, 543; Cooley on Const. Lim. 195.) Even assuming that we are wrong in claiming that constitutional grants of power to local authorities are, as a general rule, to be strictly construed, still the proposition is in any event true as applied to such incidents to such grants as may properly be regarded as subjects for police regulation. (Laws of 1882, chap. 353; *Phelps* v. *Mayor, etc.*, 112 N. Y. 216, 221; *People ex rel.* v. *Squire*, 107 id. 593; *Demarest* v. *City of New York*, 74 id. 161; *People* v. *Kerr*, 27 id. 188; *McCulloch* v. *Maryland*, 4 Wheat. 431.)

*D. J. Dean* for respondent. It is not within the power of the legislature to confer upon the relator the franchise of con-structing and operating a cable railway in the public streets without the consent of the local authorities. (Const. art. 3, § 18; *People ex rel.* v. *Newton*, 112 N. Y. 396; *In re G. E. R. Co.*, 70 id. 369; *Astor* v. *A. R. Co.*, 113 id. 93.)

EARL, J. The Third Avenue Railroad Company was duly organized under the laws of this state long before January 1, 1875, and had constructed its road, and for many years prior to that time had operated it by horse power. In February, 1887, it resolved to adopt the cable system for the movement of its cars instead of horses; and in May of the same year it

applied to the Supreme Court for a writ of mandamus to compel the commissioner of public works then in office to issue a permit authorizing it to open the streets along the route of its road to introduce that system. The writ was denied in the Supreme Court, and the decision of that court was affirmed in this court (112 N. Y. 396). We affirmed the decision on the ground that the company did not have the power under its charter to interfere with the streets in the mode proposed for the introduction of the cable system. We held that there was want of legislative authority to do what the company proposed at that time, and our decision goes no further. Thereafter the company applied to the legislature for the necessary power, and procured the passage of the act, chapter 531 of the Laws of 1889, which provides as follows:

"Any street surface railway company may in any case operate any portion of its railroad by cable or electricity, or by any power, other than locomotive steam power, instead of by animal or horse power, which may be approved by the State Board of Railroad Commissioners, and consented to by the owners of one-half in value of the property bounding on that portion of the railroad as to which a change of motive power is proposed; and in case the consent of the property owners cannot be obtained, then the determination of three disinterested Commissioners, appointed by the General Term of the Supreme Court in the Department in which said railroad is located, in favor of such motive power, confirmed by said Court, shall be taken in lieu of the consent of said property owners * * * it shall be lawful for any such railroad company to make any changes in the construction of its road or road-bed at any time rendered necessary by a change in its motive power."

Subsequently the company procured the consent of the owners of one-half of the property bounded on the route of the railroad, and the approval of the railroad commissioners for the substitution and introduction of the cable system for moving its cars. The commissioner of public works again refused to permit the company to open the streets and to introduce

the cables; and the company again applied to the Supreme Court for a mandamus to compel him to issue the permit, which was denied on the ground that under the Constitution of the state the change to the cable as a motive power could not be lawfully made without the consent of the local authorities, which had not been obtained. The constitutional provision referred to came into operation January 1, 1875, and is found in section 18 of article 3 of the Constitution, and is as follows:

"But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained."

The act of 1889, did not authorize the construction of this railroad. It was already constructed, and had been in operation for many years. It was a street surface railroad before, and was to remain so. The company was to continue to operate its cars as before, that is, cars of the same general character carrying passengers, moved upon iron rails at a moderate rate of speed back and forth through the streets. All this it had the right to do under its original charter. It took no right to operate its road under the act of 1889, and resting upon that act alone it could not operate its road. That simply confers the right to adopt a new motive power, and so far it is a regulating act. It confers no substantial franchise to conduct or operate a road. It specifies how the chartered obligations of the company may be performed, and its chartered rights exercised.

The powers and franchises of street railways existing prior to 1875, may be regulated without violating the constitutional provision referred to; and that may be done by enlarging as well as restricting them. The manner in which an existing franchise to operate a railroad may be exercised, is matter of regulation, and is generally within the absolute control of the legislature. It is not needful nor wise now, even if possible,

to determine, or say in a general way, how far the legislature may add to, or enlarge the powers and franchises of an existing street railroad company without violating the constitutional provision referred to. It is sufficient to say that it cannot give to an existing street railroad company, authority to substan tially construct or operate a new road or to make the road in its construction and operation a different one from what it before was, and this it has not done by the act of 1889. It is the same railroad, and when operated by means of a cable it will not materially increase its interference with the street for all street purposes. It is true that the act of 1889, confers a new or additional franchise upon an existing railroad company, and authorizes it to impose upon the streets a greater or different burden. But there is nothing in the Constitution which prohibits this. The legislature could, without violating the Constitution, authorize an independent company, or private individuals to place in any street of the city a cable for the traction of cars or other vehicles lawfully owned and maintained by others; by so doing it would not in any proper sense authorize the construction or operation of any railway. If it could authorize any independent company or private individuals to do this, it could authorize the railroad company itself to do it. These views find some sanction in the cases of *In re New York Elevated R. R. Co.* (70 N. Y. 327), and *In re Gilbert Elevated R. R. Co.* (Id. 361), and they are not in conflict with anything decided in *Astor* v. *Arcade R. Co.* (113 N. Y. 63).

We are, therefore, of the opinion that the orders of the General and Special Terms should be reversed, and the application for the mandamus granted, with costs in all the courts.

All concur except RUGER, Ch. J., not voting.

Order reversed.