PEOPLE ex rel. LUCKINGS v. RAILROAD COMRS.  69

App. Div.]          THIRD DEPARTMENT, MAY TERM, 1898.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL J. LUCKINGS, Relator, v. THE BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF NEW YORK and ASHLEY W. COLE and Others, as Railroad Commissioners of the State of New York, Respondents.

*Board of Railroad Commissioners — it cannot reconsider a consent to a change of motive power.*

Where the State Board of Railroad Commissioners, upon due notice, has granted an application made under section 100 of the Railroad Law (Chap. 565 of the Laws of 1890) for a change of motive power on the line of a street railroad company from horse power to an underground electric system, the privilege thereby acquired by the company is in the nature of a franchise, and the Board of Railroad Commissioners has no power, in the absence of statutory authority conferring it, to subsequently reconsider or review its action.

CERTIORARI issued out of the Supreme Court and attested on the 26th day of October, 1897, directed to the Board of Railroad Commissioners of the State of New York, and to the individuals composing said board, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings in denying the application of the relator for a reopening and rehearing of the petition of the Forty-second Street, Manhattanville and St. Nicholas Avenue Railway Company for approval of a change of motor power in the operation of its line, from horse power to an underground system of electricity.

*John A. Beall* and *John McDonald*, for the relator.

*T. E. Hancock*, Attorney-General, and *G. D. B. Hasbrouck*, Deputy Attorney-General, for the respondents.

MERWIN, J. :

For several years prior to February, 1897, there were four street railroad tracks on Amsterdam or Tenth avenue in the city of New York, two of which, the inner ones, were owned and operated by the Metropolitan Street Railway Company or Metropolitan Traction Company, and the other two by the Forty-Second Street, Manhattanville and St. Nicholas Avenue Railway Company. Horse power was used by both companies. In February, 1897, the Metropolitan Company, under the provisions of section 100 of the Railroad

Law (Chap. 565, Laws of 1890), applied to the Board of Railroad Commissioners for approval of a change of motive power on its lines from horse power to an underground electric system, and on March 18, 1897, such approval was granted. Thereafter the Metropolitan Company having, as it may be inferred, obtained the requisite consent of the property owners, and also having obtained a permit from the commissioner of public works, proceeded to the work of subsurface construction necessary to the change of motive power.

On the 26th of June, 1897, the Forty-second Street Company applied to the Board of Railroad Commissioners for an approval of a like change on its part. This application was heard by the board at the City Hall in the city of New York on August 11, 1897, after due notice of such hearing published by advertisement for not less than ten days in newspapers in that city, as well as through news items frequently printed therein. There was no appearance on behalf of the municipality, or of residents or property owners on Amsterdam avenue. It appeared that the consent of a majority of the property owners had been obtained. The board, on the eighteenth of August, issued an order approving and authorizing the change asked for, and providing : " *First.* This application is granted and accepted subject to the lawful regulations of the local authorities, and subject to such further regulation as to speed or otherwise by this board as may hereafter seem fit and proper. *Second.* Any and all changes in location of tracks, water, sewer or gas pipes, or other underground structures, rendered necessary by the construction of the conduit, shall be, by agreement with the commissioner of public works and under his direction and supervision, at the expense of the company doing the work."

Thereupon the railroad company applied to the commissioner of public works for permission to open the pavement on Amsterdam avenue for the purpose of the necessary subsurface construction, but the commissioner declined to give it. On the thirteenth of September the commissioner was served, on behalf of the company, with a notice of motion, to be made at a Special Term of the Supreme Court on the twenty-first of September, for a writ of mandamus to compel the issuing to the company of a permit. Pending this motion, and on the twenty-second of September, the relator, by petition and upon notice to the Forty-second Street Company,

PEOPLE ex rel. LUCKINGS v. RAILROAD COMRS.  71

App. Div.]    ·    Third Department, May Term, 1898.

applied to the Board of Railroad Commissioners to reopen the matter of the application of the company for approval of change of motive power and give the relator and others a hearing. The board after hearing the relator and other citizens owning property on Amsterdam avenue or interested therein, the municipal authorities and the two railroad companies, denied the application, holding that the board did not have the power to reopen the hearing, with the consequent implication that they might withdraw their approval unless additional conditions were accepted by the companies. In their opinion or decision they say : " It is our opinion that section 100 of the Railroad Law limits us to consideration of the kind of motive power to be used, and we having passed upon that question and approved of the use of the underground current of electricity, both companies acquired a right to use such motive power which cannot be taken from them in the manner suggested. The application is, therefore, denied."

The papers presented by the relator and others to the Railroad Commissioners tended to show that the use of electricity as a motive power upon four tracks, especially in that locality and in view of the great speed likely to exist, would be the source of great danger to travelers; that at least it should be confined to two tracks, and that the subsurface structures would seriously imperil the safety of large water mains located in that avenue.

The question we are asked to decide is, not whether the board erred in granting the approval, but whether the board erred in holding that they had no power to reconsider or review the matter and give the relator a hearing.

The statute which authorized a change of motive power upon the approval of the board and the consent of the owners of one-half of the abutting property (§ 100 of the Railroad Law) did not provide for any reconsideration or review by the board of their action. It did not provide for any substitute for such approval, though it did provide for a substitute for the consent of the property owners. It did not provide for any notice of a hearing upon the application to the board for an approval. The provision simply is that " any street surface railroad may operate any portion of its road by animal or horse power, or by cable, electricity, or any power other than locomotive steam power, which may be approved by the State Board

of Railroad Commissioners and consented to by the owners of one-half of the property bounded on that portion of the railroad with respect to which a change of motive power is proposed." So that the commissioners complied with all the formalities required by the law. A certain definite power was conferred upon them as to that particular subject, and that they exercised.

It is argued on behalf of the relator that section 161 of the Railroad Law confers upon the board a power which gives them a right to reconsider their approval given under section 100. By section 161 it is provided that " if, in the judgment of the board, after a careful personal examination of the same, it shall appear that repairs are necessary upon any railroad in the State, or that any addition to the rolling stock, or any addition to or change of the station or station houses, or that additional terminal facilities shall be afforded, or that any change of the rates of fare for transporting freight or passengers, or in the mode of operating the road or conducting its business, is reasonable and expedient in order to promote the security, convenience and accommodation of the public," the board shall give notice to the corporation of the improvements or changes which they deem to be proper, and after a hearing may fix a time within which they shall be made. In the following section it is provided that no examination, request or advice of the board, nor any investigation or report made by them, shall have the effect to impair in any manner the legal rights of the corporation.

Evidently the provisions of section 161 do not relate to the approval or procedure upon obtaining an approval under section 100, or to the effect of such approval when obtained. They relate rather to changes and improvements that may be found to be necessary after a road is in operation. Whether, in that event, under the power given in section 161, a change in the motive power can be compelled, it is not necessary here to inquire. The power of the board under section 100 is entirely distinct from the power given in section 161. They were not called upon to act under section 161. The proceeding before them was not under that section, and the relator asked nothing under that section.

So that we must, I think, confine ourselves to a consideration of the power given by section 100. It was given for a special purpose and was acted upon. "It is the general rule that officers of special

and limited jurisdiction cannot sit in review of their own orders or vacate or annul them." (*People ex rel. Chase* v. *Wemple*, 144 N. Y. 478, 482.) In *People ex rel. Hotchkins* v. *Supervisors* (65 id. 222, 227) it is said : " The cases are very numerous and the principle perfectly well settled that where power to do a certain act is conferred upon a public officer or board of officers, and when action has once been had under the power, it is final and may not be repeated, reversed or annulled by the same officer or body, however erroneous or unjust."

The cases of *Hartford Insurance Co.* v. *Raymond* (70 Mich. 485) and *Warner Valley Stock Co.* v. *Smith* (9 App. D. C. 187), cited by the counsel for the relator, are not, I think, applicable here. In the *Hartford* case there was an express statutory authority for the revocation of the license there in question. The *Warner Valley* case related to grants to certain States of swamp and overflowed lands. Certain lists of lands presented to the Secretary of the Interior were approved and passed for patent as being " swamp and overflowed " within the meaning of the statute applicable, but " subject to any valid adverse rights that may exist." Before the patent issued, a petition was filed by adverse claimants and the secretary thereupon canceled his approval and reopened the controversy. It was held that the secretary had a right to do so, as the matter was to be deemed pending before him until the issuing of the patent. Authorities are also cited on the subject of the regulation by railroad commissioners of traffic rates, but they are hardly applicable here.

In *Noble* v. *Union River Logging R. R. Co.* (147 U. S. 165) it was held that a decision of the Secretary of the Interior, in exercise of the powers conferred upon him by an act of Congress, that a designated railroad company is entitled to a right of way over public land, cannot be revoked by his successor in office ; that whether a railroad company applying for such a grant is a company which the statute authorizes to receive a grant of a right of way is a *quasi* judicial question, which, when once determined by the secretary, is finally determined so far as the executive is concerned. It was there said that the lands over which the right of way was granted were public lands subject to the operation of the statute, and the

74 PEOPLE ex rel. LUCKINGS *v.* RAILROAD COMRS.

THIRD DEPARTMENT, MAY TERM, 1898. [Vol. 30.

question whether the company was entitled to the benefit of the grant was one which it was competent for the secretary to decide; and when decided and his approval noted in the manner required by the statute, the company became at once vested with a right of property in the lands, of which they can only be deprived by a proceeding taken directly for that purpose; that if the right of way had been obtained by fraud, a bill would doubtless lie by the United States for the cancellation and annulment of an approval so obtained.

In the present case, the street railroad company, when it obtained the consents of the property holders, as required by the statute, and the approval of the board, obtained all that the statute required in order to confer upon them the right or privilege to change their motive power. They accepted the privilege, as we must assume from the papers before us. They took immediate steps to obtain the necessary permit and initiated legal proceedings for that purpose. Of such a privilege, so obtained under a statute (Chap. 531, Laws of 1889) containing provisions similar to those in section 100 of the Railroad Law, it was said in *Matter of Petition of Third Ave. R. R. Co.* (121 N. Y. 536, 541), that the act conferred a new or additional franchise upon an existing railroad company, and authorized it to impose upon the streets a greater or different burden. It was held in that case that the authority to an existing railroad to adopt a new motive power under the act of 1889 was not such an authority to construct or operate a street railroad as required the consent of the local authorities under the provisions of section 18 of article 3 of the Constitution of 1875; that the act of 1889 was a regulating act, and that regulation may be by enlarging as well as restricting the powers of the railroad. So it would seem that the enlarged powers were considered a franchise, though not the franchise covered by the constitutional provision.

The case of *State of Conn.* v. *New Haven & Northampton Co.* (43 Conn. 351) is cited as supporting the contention of the relator. There a railroad company abandoned a station on its road upon application to and approval by the Railroad Commissioners, who were authorized upon a hearing to grant such permission. It was held that this did not prevent the enforcing of an act subsequently passed by the Legislature, requiring the company to stop its trains at the station, inasmuch as in the charter of the company there was a pro-

vision that it might be altered, amended or repealed at the pleasure of the Legislature; that though the abandonment was complete, and the approval could not be revoked, this did not affect the reserved power of the Legislature; that the commissioners had no authority to bind the State by contract not to exercise its legislative power touching the establishment of such stations. (S. C., *sub nom. Railroad Company* v. *Hamersley,* 104 U. S. 1.) This does not reach the present case.

The question here is, not whether the State by appropriate legislation or judicial proceeding has a right to intervene, but whether the Railroad Commissioners can recall their act.

The general rule is that where there is a grant to a corporation from the State, or in pursuance of authority given by the State of a franchise or privilege in the nature of property, and the grant is accepted, it cannot thereafter be revoked against the consent of the corporation, unless there is a right reserved sufficiently broad to accomplish that purpose. (4 Thomp. Corp. §§ 5381, 5382.)

The railroad company here acquired a privilege in the nature of a franchise entitled to protection under the rule applicable to such cases. The Railroad Commissioners, having done what they had a right to do under the statute, did not, we think, err in holding that they had no power to reconsider or review their action in the absence of any authority under the statute to do so. It may be that a power of that kind should exist, but that is a question for the Legislature.

The determination of the Board of Railroad Commissioners should be confirmed, with costs.

All concurred.

Determination of Board of Railroad Commissioners confirmed, with costs.