JULIUS VOGELER, Administrator of LOUIS L. SOLOMAN, Appellant, v. MONTAGUE PUNCH, Respondent, and COPPER CROWN MINING COMPANY, Appellant.

Division Two, July 1, 1907.

1. **EQUITY: Finding of Facts.** While the finding of facts by the trial court in an injunction case is not binding upon the appellate court, yet if it fairly and, for all the. purposes of the appeal, substantially states the material facts disclosed at the trial, it may be adopted by the appellate court.

2. **CORPORATION: Stock: Unlawful Issue.** Where the stock of a corporation is issued as full paid and non-assessable, for money, property or labor grossly disproportionate in value to the par value of the stock, such issuance of stock is unlawful as against creditors and stockholders not consenting thereto.

3. ———: ———: **Paid for in Labor.** Stock in a business corporation may be paid for by services rendered.

4. ———: **Power to Contract.** A corporation, unless prohibited by statute, has the general capacity of contracting which the common law concedes to every one ordinarily competent to enter into binding engagements.

5. ———: **Stock: Payment.** The courts will treat that as payment for stock of a corporation which the parties agreed should be payment.

6. ———: **Lawyer: Services to Be Paid for in Stock.** Some months before the incorporation of a copper mining company, afterwards capitalized for two million five hundred thousand

dollars, defendant, an attorney, was employed by the company's secretary, with the consent of its president, who were the chief parties in interest, to draw the papers and do the work preliminary to the incorporation, and to continue for one year to act as legal adviser, with the understanding that he was to receive as compensation two thousand shares of the company's stock, of the par value of twenty-five dollars each, to be issued as full paid and non-assessable. He did this preliminary work, revamped by-laws prepared by the company's counsel in Michigan, where the company was incorporated, attended directors' meetings and acted as legal adviser for several months after the incorporation, and then his further services were refused. With the knowledge of all the directors, two certificates of stock, of one thousand shares each, were issued and delivered to him, and one he sold, and the company issued to the buyer in lieu thereof sixteen certificates aggregating one thousand shares. The stock never had any market value within the legal meaning of the term, but some of it sold about the time of the incorporation of the company for seven dollars and at about the time the stock was issued to defendant it could not have been sold for more than two dollars and fifty cents. *Held*, that the services rendered by defendant to the corporation, after he had subscribed for the stock, were a good consideration in payment therefor, being in accordance with the agreement to that effect, and were not disproportionate in value to the par value of the stock received by him, and the stock still held by him should not be cancelled.

7. ———: ———: **Confidential Relation: No Consideration Paid: Parties to Suit: Pleading.** If a promoter of a corporation, or other person standing in a confidential relation to it, procure the issuance of stock to himself, without consideration, such stock is fictitious and void, and may be cancelled by a court of equity. But usually such suit must be brought by the corporation itself, and in the absence of a charge of fraud or collusion it will be presumed that the directors acted for the best interests of the company. Before a single stockholder can maintain such a suit, he must allege and prove that the corporation had refused to sue, or that the defendant was in control of the company.

8. ———: ———: **Cancellation: Suit By Stockholder: Pleading.** An allegation in the petition, in a suit brought by a stockholder to have cancelled stock issued to defendant, that plaintiff "has endeavored unsuccessfully by application to the company to secure relief and protection from the wrongs and against the dangers mentioned" therein, is no better than no allegation, for it is a mere averment of a legal conclusion. The law re-

quires that the efforts to induce such action on the part of the company or directors, and the cause of the failure of the stockholder's efforts, should be stated with particularity.

9. ——: ——: ——: ——: ——: **Cross-Bill By Company.** And a cross-bill filed by the company, to which the defendant appeared, which charges no fraud, does not state a cause of action for cancelling stock issued and delivered to defendant.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neil Ryan*, Judge.

AFFIRMED.

*Collins & Chappell* and *Brownrigg & Mason* for appellants.

The court erred in holding that Punch became on January 12, 1903, and continues to be the lawful owner and holder of certificate No. 35 for one thousand shares of the capital stock of said company, and in refusing the prayer of said petition and cross-complaint for the cancellation of said stock, because: (1) Where the stock of a corporation is issued as full paid and non-assessable, for money, property or labor, grossly disproportionate in value to the par value of the stock, such issuance of stock is unlawful. Garrett v. Mining Co., 113 Mo. 339; Van Cleve v. Berkey, 143 Mo. 136; McClure v. Paducah Iron Co., 90 Mo. App. 567; Shields v. Hobart, 172 Mo. 491; Rumsey Mfg. Co. v. Kaime, 173 Mo. 551; Dynamite Co. v. Andrews, 97 Mich. 471; Bank v. Stove Polish Co., 105 Mich. 538; 2 Thompson on Private Corporations, secs. 1562, 2048; Morawetz on Private Corporations, secs. 87, 303-306; Chubb v. Upton, 95 U. S. 665; Upton v. Triblicock, 91 U. S. 45; Fisk v. Railroad, 53 Barb. 515; 10 Cyc. 767. (2) If a promotor or director of a company or other person standing in confidential relation to it procure the issuance to himself of stock of the corporation without consideration, such stock is fictitious and void, and may be can-

celled by a court of equity in a suit at the instance either of the corporation itself or of a stockholder. South Joplin, etc., Co. v. Case, 104 Mo. 572; Exter v. Sawyer, 146 Mo. 302; Garrett v. Mining Co., 113 Mo. 330; Morawetz on Corporations, sec. 286; Campbell v. Morgan, 4 Ill. App. 100; Wood v. Union, etc., Association, 63 Wis. 9; Railroad v. Schuyler, 17 N. Y. 592; Fisk v. Railroad, 53 Barb. 514; Chandler v. Bacon, 30 Fed. 538; Railroad v. Bank, 22 Weekly Law Bulletin, 248. (3) Contracts which promoters of a corporation assume to make on its behalf before it comes into existence are not binding upon the corporation unless ratified by the corporation itself with full knowledge of all the facts. Hill v. Gould, 129 Mo. 116; Pitts v. Steel Mercantile Co., 75 Mo. App. 231; Davis and Rankin v. Creamery Ass'n, 63 Mo. App. 481. (4) A corporation cannot be charged with knowledge of any of its officers or agents with respect to a matter in which, prior to its incorporation, they participated in a scheme to perpetrate a fraud upon it. Bank v. Lovett, 114 Mo. 519; Johnson v. Shortridge, 93 Mo. 227. (5) Even if the company could be held to have ratified this contract, the contract being *ultra vires*, the company would not be estopped to repudiate it unless the contract had been fully performed and unless its repudiation would operate as a fraud. Bowman Dairy Co. v. Mooney, 41 Mo. App. 665; St. Louis Mfg. Co. v. Hilbert, 24 Mo. App. 343; Gray v. Gray, 83 Mo. 106; St. Louis v. Schulenberg, etc., Co., 98 Mo. 613.

*T. J. Rowe* for respondent.

(1) (a) The general rule is that the stockholders of a corporation have no right to maintain or defend actions for or against a corporation. This duty the law devolves on the directors as the trustees and agents of a corporation, and in the absence of a charge of fraud

205 Sup—36

or collusion, it will be presumed that the directors are acting for the best interests of the corporation, and the suit must be brought by the corporation itself, and not by the stockholders. The stockholder must have exhausted all the means within his reach to obtain redress within the corporation itself. Albers v. Merchants' Exchange of St. Louis, 45 Mo. App. 218; Meyer v. Bristol Hotel Co., 163 Mo. 59; Loomis v. Railroad, 165 Mo. 469; Hawes v. Oakland, 102 U. S. 450; Ready v. Smith, 170 Mo. 172; Dimpfell v. Railroad, 110 U. S. 209; Cook, Stock, Stockh. & Corp. Law, sec. 684; 12 American Digest (Century Ed.), sec. 702, and cases cited, from States of Kansas, Maine, Mass., N. Y., and Penna.; Swope v. Villard, 61 Fed. 417; Warren v. Rubber Shoe Co., 166 Mass. 97; 10 Ency. Law and Proc., pp. 975, 6, 7, 8. (b) Stockholders must act in good faith in suing in name of corporations. 1 Spelling on Ex. Rem., sec. 747. (c) After stockholder has knowledge or is chargeable with knowledge of an *ultra vires,* fraudulent, or negligent act of the directors, he must institute his suit, if at all, within a reasonable time thereafter. If it is evident that the stockholder is waiting to see if the unauthorized act will be profitable to the corporation, the court will refuse to grant him any relief. Cook, Stock, Stockh. and Corp. Law, secs. 732, 733, note 3; Steger v. Davis, 27 S. W. 1071. (d) Where discovery of a fraud is an obvious duty and easily accomplished, its non-discovery is gross laches and will not toll the Statute of Limitations or the defense of laches. Loomis v. Railroad, 165 Mo. 495; Kroenung v. Goehri, 112 Mo. 648; Ready v. Smith, 170 Mo. 172. (2) (a) The corporation itself, after issuing its stock as paid-up stock, and declaring it so to be, cannot subsequently repudiate that declaration and agreement and proceed to collect, either from the person receiving the stock, or his transferees, the unpaid part of the par value. It is estopped from so doing. As between

the parties it is a legal and valid agreement and violates no principle of public policy. This is the rule where no rights of creditors are involved. Hill v. Coal & Mining Co., 124 Mo. 166; Dickerman v. Northern T. Co., 176 U. S. 121; 1 Cook on Corporations, sec. 30, p. 93; sec. 38, p. 99; Liebke v. Knapp, 79 Mo. 22; Bank v. Gustin, etc., Co., 42 Minn. 327; Northern Trust Co. v. Columbia, 75 Fed. 936; Wells v. Green Bay Co., 90 Wis. 442; Scoville v. Thayer, 105 U. S. 144; Lorillard v. Clyde, 86 N. Y. 384. (b) 1. Payment of shares in a corporation may be made otherwise than in money, and may be in whatever, considering the situation of the corporation, represents for that corporation, a fair just, lawful and needed equivalent for the money subscribed. Leibke v. Knapp, 79 Mo. 22; Woolfolk v. January, 131 Mo. 631. 2. Stock may be paid for by a director in a company after he had subscribed for stock, by services rendered thereafter, and in the absence of fraud, a corporation will be bound by its estimate of the value of the services. 1 Cook on Corporations, sec. 20, p. 85; Doak v. Stahlman, 58 S. W. 741; Saunders v. U. S., etc., Co., 25 Wash. 475; Divine v. Universal Sew. Mach. Co., 38 S. W. 93; Cook, Stock, Stockh. and Corp. Law, secs. 13, 44, 47; Thompson, Liab. Stockh., sec. 134. (3) (a) An attorney may recover, as upon implied promise, reasonable compensation for services rendered in the preparation of articles of incorporation and other acts in connection with the organization of a company of which he became a director and officer, if such services are accepted, and this, although evidenced by no formal recorded action on the part of the directors fixing compensation by corporation. Taussig v. Railroad, 166 Mo. 28. (b) Managing officers of corporations have power to employ attorneys and counselors, without express delegations of power or formal resolutions to that effect. Southgate v. Railroad, 61 Mo. 94; Rosenbaum v. Gilliam, 101 Mo. App. 134; Taus-

sig v. Railroad, 156 Mo. 28, 186 Mo. 269. (c) "The rule is that a party, although a director or other officer of a corporation, may recover the reasonable value of necessary services rendered to a corporation, entirely outside of the line and scope of his duties as such director or officer, performed at the instance of its officers whose powers are of a general character, upon an implied promise to pay for such services, when they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood that they were to be paid for, or ought to have so intended and understood." Taussig v. Railroad, 166 Mo. 28; Wagner v. Edison Electric Co., 177 Mo. 62; Coal Co. v. Watson, 107 Mo. App. 453; Taussig v. Railroad, 186 Mo. 276. (4) Stockholders, as such, have no implied power to represent the corporation, though they may be appointed agents, but their voluntary acts may be adopted and ratified and thereby become the acts of the corporation. Jones v. Williams, 139 Mo. 1; Cook on Stockholders, sec. 709; Hill v. Coal Mining Co., 119 Mo. 9; Pullman Co. v. Railroad, 115 U. S. 587.

BURGESS, J.—This is a suit in equity, and was instituted by Louis L. Soloman, a stockholder of the defendant Copper Crown Mining Company, against Montague Punch and the said Copper Crown Mining Company for the cancellation of a certificate for one thousand shares of the capital stock of said company of the alleged par value of twenty-five dollars each. The plaintiff, Soloman, having died during the pendency of the suit, it was revived in the name of his administrator, Charles M. Dewey. The latter having also died during the pendency of the suit, it was revived in the name of Soloman's administrator *de bonis non,* Julius Vogeler, the present plaintiff.

The petition upon which the case was tried alleges in substance that the Copper Crown Mining Company

is and has been, since the twentieth day of July, 1902, a corporation organized under the laws of the State of Michigan. That the defendant Punch is in possession of and claims to be the owner of certificate No. 35 of the stock of said corporation, purporting to be for one thousand shares of said stock, full paid and non-assessable. That said Punch has been endeavoring to sell and dispose of the stock represented by said certificate, and is now about to sell and dispose of the same. That Punch is not the owner of said stock, and has paid nothing to the company for the same. That said stock certificate, which has been for some time signed in blank by the president and secretary of the company, but not filled out for any number of shares or in the name of any person, was on the eighteenth day of September, 1902, filled out for one thousand shares in the name of Punch, and was on the twelfth day of January, 1903, delivered to Punch by M. J. Hopkins (the president of the company). That the certificate was a part of the treasury or reserve stock of the corporation, being a portion of that stock which was reserved for sale in order to raise funds to carry on its mining operations. That there was never any action by the board of directors authorizing the said Hopkins or anyone else to fill out and deliver the said certificate to Punch, but that said delivery was made by the said Hopkins to Punch upon his own motion, all of which matters and facts were well known to Punch. That prior to the incorporation of the company, Punch entered into an agreement with M. J. Hopkins and one W. R. Hopkins that the company should be incorporated under the laws of the State of Michigan, that Punch should do the legal work necessary in the matter of said incorporation and organization and continue during the first year of said corporation's existence to render all necessary legal services and advice in connection with the same. That Punch, at the time said

agreement was made, represented that he had acquaintances and connections which would enable him to procure and induce investment by other persons of the necessary funds to carry out the development of the mining business, in which it was proposed the company should engage. That said agreement between Punch and the Messrs. Hopkins was never made known to the other stockholders of the corporation or its board of directors. That Punch drew up and prepared the articles of incorporation and placed himself thereon as a subscriber for two thousand shares of the stock thereof. That thereafter and until he obtained possession of the said certificate of stock he continued to act as the legal adviser of the said M. J. and W. R. Hopkins, and pretended to act as counsel and attorney for said corporation. That subsequent to drawing the articles of incorporation, he wholly failed and neglected to perform his duties as attorney; that he failed and neglected to prepare drafts of minutes of the first meetings of stockholders and directors and of by-laws to be submitted to the board of directors, as he promised to do. That in September, 1902, he began to urge the Messrs. Hopkins to issue two thousand shares of the stock of the company to him; that in order to induce them to do so, he represented to them that certain persons were willing to invest in the company and would invest, if he could convince them that he was largely interested therein, which statement was false. He further stated to the Messrs. Hopkins that as a matter of law he was entitled to have such stock issued to him. That they fully relied upon him, and upon faith in his statements and advice delivered to him said certificate No. 35 for one thousand shares of the stock of the company, and also another certificate of the stock of the company for one thousand shares. That shortly thereafter, Punch sold or pretended to have sold the latter certificate to a third person. That the

latter certificate for one thousand shares was transferred to such third person on the books of the company by W. R. Hopkins without authority from the directors. That Punch has never paid anything to the company for either of said certificates of stock. That the company and its officers are now recognizing Punch as a stockholder in the company. That the plaintiff has endeavored unsuccessfully to secure from the company relief against the assertion by Punch of his claim of ownership of said certificate. That if Punch is permitted to sell or dispose of said certificate, the plaintiff's rights as a stockholder of said company will be seriously injured, and he will be greatly damaged, and that he is without adequate remedy at law, etc. The prayer of the petition is that the court order that said certificate be surrendered and cancelled, and that until the determination of the suit, Punch be enjoined from asserting any rights as a stockholder by virtue of said certificate or from disposing of it or attempting to dispose of it. Upon this petition, a temporary injunction was issued as prayed.

At the time of the institution of this suit, there was in force against the defendant company a peremptory writ of mandamus issued by the circuit court of the city of St. Louis against the company in a suit instituted by Punch, commanding the company in substance to recognize Punch's rights as a stockholder under the same certificate. This peremptory writ of mandamus was, upon a motion in arrest of judgment, afterwards quashed.

Punch's answer to the petition was a general denial.

The defendant, the Copper Crown Mining Company, filed an answer and a cross-bill, the allegations of which are substantially the same as those contained in the plaintiff's petition, and substantially the same relief was prayed for.

Before the taking of evidence was commenced, the plaintiff requested the court to make a written finding of facts and of the law after all the evidence had been submitted.

After hearing the evidence, the court rendered the following decree, and made the following findings of facts and of law:

"This cause coming on for hearing upon the pleadings and testimony herein, it is ordered and adjudged and decreed, that the said Montague Punch, one of the defendants herein, became on January 12, 1903, and continues to be, the lawful owner and holder of certificate No. 35 for one thousand shares ($25,000) of the capital stock of said Copper Crown Mining Co. (a corporation), a defendant and cross-complainant herein, issued by its authority for legal services rendered and to be rendered to it by him, and that he is a stockholder in said company and as such is now, and was continually, entitled from January 12, 1903, and prior thereto, to all the rights and privileges of a stockholder in said company, and that neither the plaintiff nor said Copper Crown Mining Co. is entitled to any relief in this action and that the injunction granted in Division No. 2 of this court is dissolved and the petition of the plaintiff and cross-complainant, said Copper Crown Mining Co., are dismissed and the costs of this proceeding are taxed against said plaintiff and against said company.

"And in rendering said judgment and decree the court made findings of law and facts as follows, to-wit:

"The original plaintiff, L. L. Soloman (now deceased) was, on August 31, 1903, the date this suit was filed, the owner of seventy-one shares of stock of the defendant and cross-complainant, the Copper Crown Mining Company, a mining company incorporated July 18, 1902, under the laws of the State of Michigan, with a capital stock of two million, five hundred thous-

and dollars, consisting of one hundred thousand shares of the par value each of twenty-five dollars.

"Some months before its incorporation, Montague Punch, the defendant, and an attorney at the St. Louis Bar, had been employed (with the consent of Dr. Hopkins, by W. J. Hopkins, one of the promoters of the company, and its secretary when organized) to draw the papers and do the work preliminary to the incorporation, and to continue for one year to act as its legal adviser, with the understanding that he should get as compensation two thousand shares of the company's stock, issued as full paid and non-assessable. He did this preliminary work, also drafted minutes, revamped by-laws prepared by the company's Michigan counsel, and after the incorporation attended directors' meeting and acted as the company's legal adviser until the early part of 1903, when his further services were refused by the company.

"The incorporators and board of directors for the first year were Dr. M. J. Hopkins (also the president), W. J. Hopkins his brother (also the secretary, and who did not give his testimony in this case), Julius Vogeler (the father-in-law of Dr. Hopkins), W. T. Ross (both of these got their stock as promoters), and defendant Punch, who subscribed for two thousand shares, which he was to pay for by said legal services. The Hopkinses were the chief parties in interest. All, as directors, knew that Mr. Punch was acting as counsel for the company and said directors also knew that the stock, two thousand shares in two certificates Nos. 35 and 156, of one thousand shares each, was issued to him for services rendered and to be rendered as aforesaid. No minute book was in evidence, and such minutes as were kept, seem to have been kept on slips of paper.

"One certificate (No. 35) was dated September 18, 1902, the other (No. 156) January 12, 1903, and both were delivered to Mr. Punch on the last-named

date.   In February, 1903, he sold one thousand shares (certificate 156) to one Jacob Lippe, through a broker, for one thousand dollars, and the company issued to said Lippe sixteen certificates aggregating one thousand shares, in lieu of said single certificate.   Defendant still holds certificate No. 35.

"The stock never had any market value, in the legal meaning of that term, but some of it sold as high as $7.   In September, 1902, and January, 1903, it could not be sold at a price to exceed two dollars and a half, and that price could not have been readily obtained.

"On June 15, 1903, the company, in writing, refused to recognize Mr. Punch as a stockholder, and on June 20 he began a mandamus proceeding in Division No. 6 of this court to compel recognition by the Copper Crown Mining Company of his rights as a stockholder in virtue of said certificate No. 35.   The company denied in its return that he was a stockholder.   After a hearing, a peremptory writ was issued on August 31, 1903, but motions for a new trial and in arrest were sustained on September 21, 1903, because the court erred in granting a peremptory writ that did not conform in its requirements to the alternative writ.   That case is still pending.   On September 23, 1903, the company called on Mr. Punch to pay on the two thousand shares he had subscribed for an assessment of six dollars per share.

"Mr. Soloman did not seek relief through the corporation only to be denied, as alleged in the petition; on the contrary, after the order in the mandamus case of August 31, 1903, granting the peremptory writ, it was agreed between the company and Mr. Soloman that the latter should bring this action as the quickest and best way to effect their common purpose of having defendant Punch judicially declared not a stockholder in said company.

"The court finds and declares the law to be that

under the facts found the defendant, Mr. Punch, became on January 12, 1903, and continues to be, the lawful owner and holder of certificate No. 35 for one thousand shares of the capital stock of the Copper Crown Mining Company issued by its authority for services rendered and to be rendered, and said company could not against his wishes refuse to further receive his services and thereby affect his rights as stockholder.

"The court finds that neither the plaintiff nor said Copper Crown Company is entitled to relief in this action.

"The injunction heretofore granted in Division No. 2 of this court is dissolved, and the petition of the plaintiff and cross-complainant of said Copper Crown Mining Company are dismissed and the costs of this proceeding ordered taxed against plaintiff and said company."

In due time plaintiff and the Copper Crown Mining Company filed their motions for new trial and in arrest, which were overruled, and they bring the case to this court by appeal for review.

While the finding of facts by the court was authorized by section 695, Revised Statutes 1899, it is not binding upon this court in this equity proceeding; but as it fairly and, for all the purposes of this case, substantially states the material facts disclosed upon the trial, it will, therefore, be adopted by this court.

It is well settled that when the stock of a corporation is issued as full paid and non-assessable, for money, property or labor, grossly disproportionate in value to the par value of the stock, such issuance of stock is unlawful as against the stockholders not consenting thereto, and creditors. [Garrett v. Kansas City Coal Mining Co., 113 Mo. 330; VanCleve v. Berkey, 143 Mo. 109; Shields v. Hobart, 172 Mo. 491; Rumsey Mfg. Co. v. Kaime, 173 Mo. 551; McClure v. Paducah Iron Co.,

90 Mo. App. 567; Chubb v. Upton, 95 U. S. 665; Upton v. Tribilcock, 91 U. S. 45.]

But the court found that some months before the incorporation of the Copper Crown Mining Company, Montague Punch, the defendant, an attorney at the St. Louis Bar, had been employed (with the consent of Dr. Hopkins) by W. J. Hopkins, one of the promoters of the company (and its secretary when organized), to draw the papers and do the work preliminary to the incorporation, and to continue for one year to act as its legal adviser, with the understanding that he should get as compensation two thousand shares of the company's stock, issued as full paid and non-assessable; that he did this preliminary work, also drafted minutes, revamped by-laws prepared by the company's Michigan counsel, and, after the incorporation, attended directors' meetings, and acted as the company's legal adviser until the early part of 1903, when his further services were refused by the company. That Punch and two other promoters got their stock as such. That Punch got two thousand shares which he was to pay for by said legal services. That Dr. M. J. Hopkins and W. J. Hopkins were the chief parties in interest, and that all, as directors, knew that Punch was acting as counsel for the company, and that said directors also knew that the stock, two thousand shares in two certificates, Nos. 35 and 156, of one thousand shares each, was issued to him for services rendered and to be rendered. That one certificate (No. 35) was dated September 18, 1902, the other (No. 156), January 12, 1903, and that both were delivered to Punch on the last-named date. That in February, 1903, he sold one thousand shares (certificate No. 156) to one Jacob Lippe, and that the company issued to said Lippe sixteen certificates aggregating 1,000 shares in lieu of said single certificate, and that defendant still holds certificate No. 35. That the stock

never had any market value in the legal meaning of the term, but some of it sold as high as $7; that in September, 1902, and January, 1903, it could not be sold at a price to exceed $2.50, and that even that price could not have been readily obtained.

The court's finding of facts is clearly supported by a preponderance of evidence, but even if it were close, we should be inclined to defer to the finding of the court.

It has always been held by this court that stock in a business corporation may be paid for by services rendered. Any other doctrine than this would place a corporation under a disability not contemplated by law. A corporation, unless prohibited by statute, has the general capacity of contracting which the common law concedes to every one ordinarily competent to enter into binding engagements. [Liebke v. Knapp, 79 Mo. 22; Woolfolk v. January, 131 Mo. 620.]

There was no fraud found by the chancellor to have been practiced upon the directors of the company by Punch in obtaining the stock, or any part of it; and although, by agreement of the parties, the stock was to be partly paid for in services to be thereafter rendered the company by him, the company refused his services, and the courts will, under such circumstances, treat that as payment which the parties agreed should be payment. [Thompson on Liability of Stockholders, sec. 134.] The services rendered by Punch to the corporation, after he had subscribed for stock, were a good consideration in payment therefor, being in accordance with an agreement to that effect. [Cook on Corporations (5 Ed.), sec. 20, p. 85.] So a corporation may lawfully agree to issue stock to a person in payment of services in procuring a loan for the corporation and guaranteeing payment of the same. [Doak v. Stahlman, 58 S. W. 741.] The rule is, "That a party, although a director or other officer of a corporation, may

recover the reasonable value of necessary services rendered to a corporation, entirely outside of the line and scope of his duties as such director or officer, performed at the instance of its officers, whose powers are of a general character, upon an implied promise to pay for such services, when they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood that they were to be paid for, or ought to have so intended and understood.'' [Taussig v. Railroad, 166 Mo. l. c. 34; Wagner v. Edison Electric Ill. Co., 177 Mo. 62; Coal Co. v. Watson, 107 Mo. App. l. c. 453; Taussig v. Railroad, 186 Mo. 269, 276.] Under the facts as found, there is no ground for holding, or to justify the contention, that the services rendered and which were to be rendered by Punch were disproportionate in value to the par value of the stock, or that they were not reasonably commensurate with the par value of the stock received by him.

Another insistence is that if a promoter of a company, or other person standing in a confidential relation to it, procure the issuance to himself of stock of the corporation, without consideration, such stock is fictitious and void, and may be cancelled by a court of equity in a suit at the instance either of the corporation itself or of a stockholder.

The almost universal doctrine is that such a suit must be brought by the corporation itself, and that its stockholders cannot maintain or defend an action for or against it. This duty the law imposes upon the directors, as the trustees and agents of the corporation of which they are members, and in the absence of a charge of fraud or collusion it will be presumed that the directors acted for the best interests of the corporation. ''The discretion of the directors or the majority of the stockholders as to acts *intra vires* cannot be questioned by single stockholders unless fraud is involved. This proposition of law is clearly, firmly and

very properly established beyond any question.''
[Cook on Stockholders and Corporation Law (3 Ed.),
sec. 684; Meyer v. Bristol Hotel Co., 163 Mo. 59.] In
Albers v. Merchants Exchange of St. Louis, 45 Mo.
App. l. c. 218, it is said: ''Exceptions to this rule
have been recognized, where the circumstances are such
that the action cannot be brought in the corporate
name. Such an exception generally arises in cases
where the directors, who are guilty of the breach of
trust, own or control a majority of the shares, so that
they can perpetuate themselves in power, keep control
of the corporation, and defy the minority. In such
cases the minority would be remediless, if the courts of
equity did not open their doors to them. But courts of
equity cannot assume the management of all the cor-
porations in the country; and, if they were to open
their doors to every dissatisfied or dissenting
stockholder, in cases where he should fail to dis-
close facts making it clear that no redress could
be had through regular corporate action, litiga-
tion of this kind would be be endless; for, as was
forcibly said by MELLISH, L. J., if a mere irregularity
in the business of a company 'gives a right to every
member of the company to file a bill to have the ques-
tion decided, then, if there happens to be one cantank-
erous member, or one member who loves litigation, ev-
erything of this kind will be litigated; whereas, if the
bill must be filed in the name of the company, then,
unless there is a majority who really wish for litigation,
the litigation will not go on.' [MacDougall v. Gardiner,
L. R. 1 Ch. Div. 13, 20.] It is, therefore, a settled prin-
ciple of equity jurisprudence that, before a court of
equity will open its doors to a single stockholder, al-
though he comes, as he must, not only on behalf of
himself but also in behalf of all the other stockholders,
to an inquiry into grievances of this kind, he must show
that there is no other road to redress; and he does not

show this, unless he shows that all remedies within the corporation itself have been exhausted." The same rule is announced in Bulkley v. Big Muddy Iron Co., 77 Mo. 105, and Slattery v. Trans. Co., 91 Mo. 217.

In order to maintain this action it devolved upon plaintiff to allege and prove that the corporation had refused to sue, or that the defendant, Punch, was in control of the corporation.

In Hawes v. Oakland, 104 U. S. l. c. 460, it is said: "But in addition to the existence of grievances which called for this kind of relief, it is equally important that, before the shareholder is permitted, in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain an action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity."

The mere allegation in the petition that plaintiff "has endeavored unsuccessfully by application to the company to secure relief and protection from the wrongs and against the danger mentioned in the petition" is no better than no allegation, especially as the law requires that the efforts to induce such action on

the part of the company or directors, and the cause of the failure in his efforts, should be stated with particularity. Instead of specific allegations in regard to these matters, we are left entirely to conjecture what kind of relief or protection plaintiff sought at the hands of the company. "The allegation quoted is simply the averment of a legal conclusion, not the statement of issuable facts; . . . not, therefore, either traversable or demurrable, and is to be treated as no statement at all, and consequently obnoxious to attack by general demurrer. . . . Nor will it do to say that defendant should have moved to have made the pleading more definite and certain. He might indeed have done this, but was not compelled to do so. The primary duty of making the pleading definite and certain is on the party drawing the pleading, and he cannot, by his remissness, cast upon his opponent the *onus* of doing what his own duty demands, a duty which consists in expressing his meaning clearly and unmistakably." [Mallinckrodt Chemical Works v. Nemnich, 169 Mo. l. c. 397.]

Nor does the evidence show any proper effort upon the part of the plaintiff to get the company to institute suit to cancel the certificate of stock.

It is, however, contended that even if the plaintiff's bill were insufficient on account of failure to show sufficient effort on his part to procure action by the company, or even though the evidence did not show sufficient effort to justify the court in granting relief at the suit of a stockholder, yet, inasmuch as a cross-bill was afterwards filed on behalf of the company, and as the defendant appeared to the cross-bill, and the cause was heard thereon as well as upon the original bill, that was sufficient to give the court jurisdiction to decree whatever relief was justified by the pleadings and the evidence. With respect to this contention, it is

205 Sup—37

sufficient to say that there is no allegation of fraud in the cross-bill either upon the part of the defendant or the officer of the company who issued to him the certificate of stock, nor was there any fraud shown by the evidence or found by the court to have been practiced by defendant in obtaining the stock, and it is only upon this ground that it would have the power to cancel it.

Our conclusion is that the judgment should be affirmed. It is so ordered. All concur.