ROBERT E. BATES and ROBERT W. BATES, Respondents, v. F. H. WERRIES and MARY A. WERRIES, PARIS J. KEYS, RAY COUNTY COAL COMPANY and JOHN M. CLEARY, Administrator, Appellants.

Kansas City Court of Appeals, December 3, 1917.

1. **EQUITY: Corporations: Suit for Receiver Pendente Lite by Stockholders: Majority Sale.** Courts of equity will not interfere in the internal management of corporations to settle mere quarrels and differences of opinion between stockholders, as the principle that the majority must rule is rigidly upheld in the absence of fraud, oppression etc. But where the action of the majority is so wholly opposed to the interest of the corporation and the minority stockholders, that it amounts to a fraudulent or wanton destruction of

Bates v. Werries.

the latter's rights, and the minority is otherwise remediless, equity will grant relief.

2. ——: ——: ——: Grounds for Appointment: Ancient Equity Jurisdiction: Statute. Under the principles of ancient equity jurisdiction and under the statute, section 3364, R. S. 1909, a court of equity has power to appoint a receiver *pendente lite* to carry on the business of the corporation during the pendency of a suit to determine who are the majority stockholders and to suspend and remove misbehaving directors who by fraud, conspiracy, covenous conduct or other extreme mismanagement, have jeopardized the rights of stockholders and have unfairly destroyed the original corporate *entente cordiale*. And this is true even where the corporation is solvent.

3. ——: ——: ——: In an action to remove misbehaving directors and to determine the ownership of certain stock so as to settle who are the majority stockholders and entitled to control the corporation, plaintiffs do not state themselves out of court by alleging that they are in reality the majority stockholders but their rights were not recognized and they could not obtain recognition of them. Nor does the fact that the offending directors have ceased their wrong doing remove the necessity for a receiver, since the dispute as to who are the majority stockholders still remains and the power still exists to again commence the acts complained of, the moment the chancellor's restraining hand is removed.

4. ——: ——: ——: Decree: Matters not Within the Pleadings. In an equity suit by stockholders to determine who shall control the corporation and to remove offending directors, in which petitioners asked for the restoration of specific funds alleged to have been misapplied but did not pray for a general accounting, the decree cannot include other misappropriations not mentioned in the bill for relief.

5. ——: Issue of Stock: Consideration. Where the incorporators deposited stock in the corporate treasury with an agreement that it was to be returned to them upon their performance of an agreement to pay a stipulated cash sum for other stock they had deposited, the return of the former stock to them after performance of the said agreement cannot be said to be without consideration.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED AND REMANDED (*with directions*).

*James Shannon, Joseph S. Rust, Morrison, Nugent & Wylder* and *Lavelock & Kirkpatrick* for appellants.

*James L. Ferris, Jr., & Sons* and *George W. Crowley* for respondents.

TRIMBLE, J.—The litigation herein grew out of controversies between stockholders relating to the control, management and direction of the corporate affairs of the Ray County Coal Company, the title and division of certain shares of stock therein, and other matters incidental thereto. The suit was begun in Ray County, Missouri and went on change of venue to Chariton. There, upon a hearing as to the appointment of a receiver *pendente lite,* the court appointed The Richmond Trust Company as receiver and authorized it, upon acceptance and qualification, to take charge of the affairs of said corporation. The said receiver duly qualified and filed bond which was approved. From the order appointing a receiver *pendente lite* the defendants, F. H. Werries, Mary A. Werries, Paris J. Keys and Ray County Coal Company, appealed to the Supreme Court of Missouri, and the case was there known as No. 18,816. Afterwards, the case on its merits came to trial and a decree was entered in favor of plaintiffs, granting, in certain respects, the relief asked for, which will appear later on. From this decree the said defendants appealed to the Supreme Court of Missouri and the case was there docketed as No. 19,490. The two causes were there consolidated and argued and submitted as one case. The Supreme Court held that, as the record did not disclose the amount in dispute exceeded $7500, it had no jurisdiction and transferred the case here. [See Bates v. Werries, 196 S. W. 1124.]

The Ray County Coal Company is a Missouri Mining Corporation organized in 1907. Originally there were four incorporators, and the stock was paid up by the conveyance to said corporation of certain coal lands in Ray county which the corporation now owns.

In order to provide the corporation with capital whereby to develop its mines, the incorporators turned into the treasury $20,000 par value of the preferred

and $20,000 par value of the common stock, with the agreement and understanding that each of said incorporators should buy one-fourth of said preferred stock at $5000, and, with every five shares thereof, should receive three shares of the common stock. This, when done, would leave 80 shares of common stock remaining in the treasury; but the agreement was further that each incorporator, upon performing his part of the agreement by paying his $5000, should also receive his equitable proportion of the said 80 shares, but if any incorporator defaulted in the payment of his $5000, he should forfeit to the company his part of the said remaining 80 shares. All four of them, however, performed their part of the agreement. The mine was developed and put upon a going basis with the $20,000 paid in; and, on December 7, 1911, the 80 shares not being needed for further development and the incorporators being entitled to said 80 shares under their performed agreement, the corporation through its board of directors ordered said 80 shares issued to said incorporators and their successors in the proportion above named, to-wit, 3 shares of common to every 5 shares of preferred stock. The record shows that the motion by which this was authorized was seconded and voted for by the defendant Mary A. Werries, then Mary A. Crawford, she at that time holding the stock originally held by her husband Charles Crawford one of the four original incorporators. These 80 shares were never issued to or divided among the incorporators as authorized and directed by the board although plaintiff Robert E. Bates thereafter demanded his *pro rata* share thereof. The disposition and vesting of the title to these shares was one of the matters sought to be adjudicated in this suit and is one of the things which the decree rendered therein sought to establish and determine.

The first petition in the suit, which was filed November 30, 1915, is not shown in the record. But it appears from said record that summons was issued and served on an amended petition filed January 6, 1915,

and the complaints therein alleged as grounds for relief may be summarized as follows:

1.   That the shares of stock held and claimed to be owned by Mary A. Werries were the property of her former husband Charles Crawford, now deceased, but from whom said Mary A. Werries had procured said shares while he was insane. (The evidence disclosed that plaintiff, Robert E. Bates, had, at the request of the then Mary A. Crawford, attested the supposed signature of her husband Charles Crawford, to an assignment to her of his said stock, and, on account of Bates' knowledge of the mental condition of said Charles Crawford, this allegation was made in the petition in order to safeguard the ownership of the stock and correct any error he had made in attesting said signature. However, upon the trial, the chancellor found that said Charles Crawford was of sound mind, and, as plaintiffs did not appeal, this issue is no longer in the case).

2.   That the defendants, Mary A. Werries, F. H. Werries and Paris J. Keyes, acting directors of said corporation and constituting a majority thereof, are grossly mismanaging the affairs of said corporation and have conspired together to run the said corporation, its mine and business, for their own personal ends and benefit in total disregard of the best interests of said corporation and to the great loss and irreparable injury of said corporation and the plaintiffs; that the money and bank account of the corporation was altered and changed to the personal account of one of said directors defendant Keyes, who had commingled the corporate money with his own personal funds; that they were violating the laws of the State by practicing usury in the payment of employees, charging 10 per cent interest on the pay of miners when advanced before pay day was due, thereby making said corporation an outlaw; that, in line with their purpose to wreck and ruin the corporation, they had agreed to pay one of their number $100 a month pretendedly as a salary for his services as superintendent, he being incompetent, inefficient, and not possessed of skill or knowl-

edge of coal mining so as to protect the lives of the miners. He was also charged with narrowing the possible mining area of the mine and greatly hazarding and jeopardizing the interest of the corporation and the lives of those working therefor.

3. That defendants, in order to obtain complete control and domination of said corporation, had made a pretended change in the by-laws whereby they have secured such control and have used the said corporation for their own personal ends and benefit, and plaintiffs as minority stockholders have no means of protecting their interest against the same.

4. That said F. H. Werries is wholly insolvent, and the solvency of the other defendants is uncertain, the real estate owned being heavily incumbered and other property being in stocks easily transferred and hid.

5. That said defendants seek to impose upon said corporation an unjust and unconscionable contract with an unincorporated concern known as the Willow Creek Coal Company, in which defendants are silent partners; which, if carried out, would ruin the corporation and which contract is a mere gratuity to the Willow Creek Coal Company and purely for the interest and benefit of said defendants, or one of them.

6. That by reason of the conduct of said defendants and their gross mismanagement of the affairs of said corporation the assets thereof will be frittered away and lost to the stockholders.

The petition then prayed that a receiver *pendente lite* be appointed; that the contract with the Willow Creek Coal Company be cancelled; that Keyes be required to pay to the Receiver the money he had received belonging to the company and that an accounting therefor be had; that defendants be enjoined from interfering with the management of the mine and that they be removed as directors and that all other equitable relief be granted.

Later, but before the hearing for the appointment of a receiver *pendente lite* was had, another amended

petition was filed which, in addition to the above, set up the following:

(a). The order of the Board of Directors, made December 11, 1911, whereby the above mentioned 80 shares were ordered distributed among the incorporators in accordance with the aforementioned agreement to purchase preferred stock.

(b). That none of this stock had been distributed; that since the institution of the suit plaintiff Robert E. Bates had, through one Guy R. Murray, purchased the stock held by Keyes, and plaintiffs were now the owners of a majority of the stock, but that the defendants, F. H. and Mary A. Werries were wrongfully claiming to own a controlling interest in the stock of said company and had elected themselves to offices in the directorate and were no longer running the mine but allowing it to be idle and to deteriorate.

(c). That said defendants refused to issue 40 shares, of the said remaining 80 shares, to plaintiff Robert E. Bates, that being the proportionate share to which he was now entitled by reason of his present ownership of stock.

(d). That plaintiffs own the controlling interest in said corporation when their rights and interests have been determined and fixed by the court.

(e). That plaintiffs are helpless and remediless without the interposition of a court of equity.

In addition to the former prayers, the petition prayed that the title to said 40 shares be adjudged to be in plaintiff Robert E. Bates and that they be ordered to be issued to him; that the present directors be ousted; and that new directors be appointed to proceed and hold elections as the law directs.

The defendants filed separate answers. Keyes set up that he had, since the institution of the suit, transferred all his interest in the Coal Company to Murray for plaintiff Robert E. Bates, and asked to be discharged. The defendants Werries filed a general denial, with an allegation that plaintiffs were estopped to question either the title of Mary A. Werries to said stock in the company, or the right of defendants to

act as directors. The Ray County Coal Company's answer was (1) a general denial, (2) that plaintiff Robert E. Bates be required to account for money he owed the Coal Company the amount of which was unknown, and (3) that defendant Keyes be also required to account. Defendant Cleary, Administrator of Charles Crawford, deceased, disclaimed knowledge of the allegations of the petition and called for strict proof.

Upon final hearing, the chancellor found as follows:

(1). That the Ray County Coal Company was organized, its stock was originally paid up, a part thereof turned back into the treasury for development purposes, and that $20,000 par value of the preferred stock was purchased by the four incorporators with the agreement to share in the common stock including said 80 shares as has been herein above set out; that upon the full performance of the agreement to buy said preferred stock, and by the resolution of the Board passed December 11, 1911, the said 80 shares became and was in equity the property of said original incorporators and their successors, and that as Robert E. Bates is now the owner of 100 shares of said preferred stock and Mary A. Werries is now the owner of 100 shares thereof, each of said parties is now entitled to 40 of the said 80 shares apparently remaining in the treasury.

(2). That on November 10, 1914, Robert W. Bates, Robert E. Bates, F. H. Werries, Mary A. Werries and Paris J. Keyes were the directors of said Company and Robert E. Bates was the president thereof and, since the incorporation of said company, had at all times managed the affairs of the corporation with efficiency and fidelity to the stockholders. But that on December 10, 1914, defendants, being a majority of the board, conspired together to wrest the management of the company from Robert E. Bates so that they might control the same and gather to themselves an undue portion of its profits.

(3). That defendants, in behalf of said company and assuming to act for it, entered into a contract with the Willow Creek Coal Company which was inequitable

and not in the interest of the corporation but which was a subterfuge and device provided by the defendants as a means whereby they might appropriate an unearned share of the profits of the corporation.

(4). That said defendants attempted to pass by-laws with the purpose and intent to provide means whereby Robert E. Bates might be removed as an officer and director of the company; and pursuant to said by-laws and in furtherance of their conspiracy, filed charges against said Bates which were without foundation and which were made merely as an excuse for ejecting him as an officer of said company.

(5). That during the time the defendants have been in charge of the company its records have been kept in such condition that the court is unable to ascertain the financial status of the corporation, the amount of coal marketed or whether coal is produced at a profit or loss.

(6). That Charles Crawford, at the time he assigned his shares to Mary A. Crawford now Mary A. Werries, was of sound mind.

(7). That the defendant Keyes transferred his stock to Murray who transferred it to Robert E. Bates, and that of the stock actually issued, Robert E. Bates, at the date of the decree, owns 100 shares of preferred and 268 shares of common stock, the defendant Mary A. Werries owns 100 shares of preferred and 249 shares of common stock; that F. H. Werries owns 2 shares, and C. H. Borintz owns 1 share of the common stock,

(8). That out of the funds of the company the defendants F. H. and Mary A. Werries paid, on November 1, 1915, $280 fees to certain attorneys for services as their personal representatives but not for any services rendered the defendant Ray County Coal Company, that said sum should, with 6% interest, be charged against them; that on February 3, 1915, the defendants, out of the funds of said corporation, paid $700 to certain other attorneys for services rendered defendants personally and not for any services ren-

dered the corporation or necessary for its protection, and that said amount should be repaid to said corporation.

(9). That under the alleged contract with the Willow Creek Coal Company $207.90, as alleged commissions on coal sold, was paid to the defendant F. H. Werries and that it should be repaid by him with interest at 6% from August, 1915.

(10). That the defendants have abused their trust as directors and officers of the corporation, have grossly mismanaged its business and property, should be removed from their positions as officers and employees of the company, and that a receiver should be appointed to take charge of its property and affairs.

It was thereupon adjudged and decreed:

"1st. That the plaintiff R. E. Bates and Defendant Mary A. Werries each be vested with the title to 40 shares each of the common stock of the defendant Ray County Coal Company, and now in the hands of said Coal Company, and the receiver of said company, hereinafter named, is directed to issue to said R. E. Bates and Mary A. Werries certificates for said 40 shares of stock, and said receiver is further ordered to issue to R. E. Bates renewal certificates for 50 shares of preferred and 134 shares of common stock, purchased by said R. E. Bates or Paris J. Keys, upon surrender properly signed and indorsed the outstanding certificates for said stock, and to transfer upon the books of said coal company any other stock to the purchasers thereof upon a surrender of the certificates therefor properly indorsed.

2nd. That the defendants F. H. Werries and Mary A. Werries be removed as officers, directors or employees of the defendant company, that they each of them be and they are hereby enjoined and restrained from exercising any control, direction or management over the property, business or effects of the defendant Ray County Coal Company, and they and each of them are hereby directed and commanded to pay to the receiver, hereinafter named, any moneys in their hands the property of the defendant coal company; that they

surrender to said receiver all the property, books, records and evidences of debt due the company of every kind and character, and that they and each of them refrain from interference in any way, with the management of the Ray County Coal Company, by said receiver.

3rd. That the contract entered into by F. H. Werries, Mary A. Werries and Paris J. Keys on behalf of the Ray County Coal Company with the defendants F. H. Werries and W. S. Curdy under the firm name ''Willow Creek Coal Company'' be and the same is hereby canceled and held for naught.

4th. That on account of the moneys paid to James Shannon and Gilbert Lamb, the defendant Ray County Coal Company shall have judgment against the said Mary A. Werries and F. H. Werries in the sum of $280 with 6 per cent interest from this date, that execution issue therefor.

5th. That on account of commissions paid the defendant F. H. Werries the said Ray County Coal Company shall have judgment against the said F. H. Werries in the sum of $219.25, with interest from this date at 6 per cent interest from date, and that execution issue therefor.

6th. That on account of the moneys paid Lavelock and Kirkpatrick as herein set out, the defendant Ray County Coal Company shall have judgment against the defendants Paris J. Keys, Mary A. Werries and F. H. Werries in the sum of $731, with interest at 6 per cent from this date, and that execution issue therefor.

7th. That the Richmond Trust Company is hereby appointed receiver of the Ray County Coal Company; is directed to take immediate charge of the properties of said mine of every kind and character, to take charge of all its records, books, moneys and evidences of debt of every kind. That it proceed immediately to collect, sue for and recover all moneys and property due said company. That it continue said mine in operation, that it employ such assistance as it may require; that if necessary it be, and is hereby empowered to borrow money on the credit of the defendant company to con-

tinue its operation. And that it ascertain as soon as may be the financial condition of the defendant company, and that it report the same, together with a report of its administration, of this trust to this court, at each regular term thereof, until the further order of this court.

8th. The bond of The Richmond Trust Company as receiver is fixed at the sum of $10,000.

9th. That all the costs hereof be taxed against the defendants.''

Defendants' contention, made for the first time in the appellate court, that the petition is insufficient, cannot, we think, be successfully maintained. Taking it altogether, it is not a mere mass of legal conclusions without the allegation of any facts upon which relief can be sought or obtained. Certainly it does not so wholly fail to state any cause of action as to constitute no basis whatever for the granting of any relief. It is true, courts of equity will not interfere to settle mere quarrels and differences of opinion between stockholders as to the manner in which a corporation should be managed. And in the conduct of a corporation's internal affairs the principle that the majority must rule is rigidly upheld in equity in the absence of fraud, oppression, etc. [4 Thompson on Corp., sec. 4533.] Nor should a court of equity interfere in doubtful cases where the action of the majority may be susceptible of different constructions; but where such action is so wholly opposed to the interests of the corporation and the minority stockholders that the conduct of the majority amounts to a wanton or fraudulent destruction of the rights of the minority, a court of equity will take cognizance of the matter at the suit of the minority. [Gamble v. Queens County Water Co., 123 N. Y. 91.] It is also true that such minority, in imploring the aid of equity, must show that it is otherwise remediless. [Vogeler v. Punch, 205 Mo. 558, 575.] However, the petition in its entirety raises far greater issues than those arising over a mere dispute as to who should hold the offices in the corporation or a quarrel as to

the way its affairs should be best managed. While the word "fraud" is not used in the petition, yet the situation it presents is a revelation of fraud in law, to say, nothing of oppression and wrongful arbitrary and unjust conduct whereby the rights of the minority stockholders were not only substantially injured but were also in a fair way to be destroyed. And it is clear, from the nature of the evils to be avoided by the suit and the nature of the relief asked, that the best interests of the corporation are sought and that the just and *lawful* rights of all the stockholders will be preserved by the chancellor's interposition.

Nor does the petition fail to present grounds justifying the appointment of a receiver. In Cantwell v. Columbia Lead Co., 199 Mo. 1, 1. c. 43, it is said:

"The board of directors of a corporation are but trustees of an estate for all the stockholders and may not only be amenable to the law, personally, for a breach of trust, but their corporate power under color of office to effectuate a contemplated wrong may be taken from them when, by ,fraud, conspiracy or covinous conduct, or extreme mismanagement the rights of minority stockholders are put in imminent peril and the underlying, original, corporate *entente cordiale* is unfairly destroyed."

It was necessary that the business of the corporation go on during the litigation, and this was the purpose of the appointment of the receiver. It is a receivership *pendente lite*, and a court of equity has power to appoint a receiver for such purpose. [High on Receivers (4 Ed.), sec. 83a, p. 113; Exchange Bank v. Bailey, 39 L. R. A. (N. S.) 1032.] .Imperfections in the bill do not bar the appointment. [High on Rec. (4 Ed.), sec. 86.] It also has such power under the circumstances presented by the petition. [High on Rec. (4 Ed.), sec 292, pp. 347-9, sec. 295a.] And this is true, in cases like the present, even where the corporation is . solvent. [High on Rec. (4 Ed.), sec. 295b.] In the condition presented, legal remedies would, if they could be pursued, be inadequate and insufficient, and

this justifies the resort to the suit herein. [34 Cyc., p. 25.] The basis of plaintiffs' cause of action is not to be found alone and only in the principles of ancient equity jurisdiction, but, if it were, the situation here presented is amply sufficient to call for the exercise of such jurisdiction. The power to appoint a receiver in a situation like this is also conferred by statute, and plaintiffs' cause of action is also based thereon. Section 3364, Revised Statutes 1909, gives the circuit court power (1) to compel directors of a corporation to account for their conduct in the management of the funds, property and business committed to their charge, (2) to decree payment by them to the corporation of money they may have acquired to themselves or transferred to others or have wasted by the abuse of their powers, (3) to suspend any director whenever it appears that he has abused his trust, (4) to remove him upon proof of gross misconduct, (5) to direct, if necessary, new elections to be held to supply vacancies caused by such removal. Section 3365 authorizes the court to appoint a receiver to take charge of said corporation, collect the debts due it, etc., subject to the control of the court. Section 3366 provides that the jurisdiction so conferred shall be exercised on petitions filed at the instance of any stockholder.

Nor can we agree with defendants' contention that the evidence does not support the chancellor's finding as to the agreement by which the 80 shares of stock became the property of the incorporators when they performed their agreement to buy at par one-fourth of the preferred stock in the treasury. The evidence shows that such was the contract; and the order passed by the Board of Directors at the instance of Mary A. Werries, and with her vote, shows that such contract was fully performed on all sides not only by the incorporators but also by the corporation, and nothing remained to be done except to divide and turn over the said stock. The action of the Board of Directors, in the light of the evidence and of the language of the

motion itself, is not susceptible of any other reasonable interpretation.

It may be true that Mrs. Werries has, since her control of the corporation, advanced money for the benefit of the corporation, but, if so, she has a claim against it as a *creditor* which can be recognized and adjusted in that way. Certainly she cannot claim to own 20 of the said shares as a *purchaser* by reason of such advancements since she had the fullest notice that the 80 shares, although not formally issued, were nevertheless not really in the treasury for sale but belonged to the incorporators. It is contended that Mr. Bates has formally admitted she became the purchaser of said 20 shares. But this was contained only in an offer to compromise and settle the suit. That was no more than an offer to *regard* and *treat* her as a purchaser thereof in a compromise and settlement of the case. The offer was not accepted and the compromise never became effective. Nor has the court *given* 40 shares of said stock to Mr. Bates without anything being received in return. The consideration for said shares was paid by all the incorporators when, pursuant to the agreement, they purchased the preferred stock and paid their money therefor with the understanding they were also to get back their equitable proportion of said shares. And Mr. Bates, as one of the four incorporators and as the successor to another, both of whom had performed their agreement, became entitled to 40 of said shares. Mrs. Werries, as the successor of the others, became entitled to the other 40 shares.

It seems that Keyes, in consideration of $1 had assigned his stock to Mrs. Werries to be held and voted by her until certain money advanced by her to the corporation had been repaid when his stock should *ipso facto* be released. And it is contended that the court should not have decreed the Keyes stock to Bates as having been sold by Keyes to him through Murray, but that Mrs. Werries was entitled to a judgment for said stock or at least should have been permitted to hold and vote the same until her debt was paid. But there is no showing that Mr. Bates, when he bought the

Keyes stock, knew of any such assignment, even if such assignment was anything more than a mere precaution to insure Keyes remaining on her side of the controversy.

Nor does it appear that at the time of the trial all reasons for the appointment of a receiver had disappeared. Conditions were practically the same, or if they had changed, such change consisted only in the ceasing to do certain things complained of but with the power to again commence them once the restraining influence of the chancellor's powerful hand was removed. The controversy over the ownership of the stock and as to who had the majority thereof and consequently where the right of control lies remained and is even yet insisted upon in opposition to the disposal thereof made in the decree. Nor did plaintiffs state themselves out of court by alleging that they were majority stockholders. The allegation, in effect, is that, in reality, they were majority stockholders but that their rights were not recognized and they could not obtain recognition of them.

The question of how long the receivership is to be continued is not before us, but we may venture to assume that it will not be continued any longer than necessary to enable the affairs and condition of the corporation to be disentangled and understood, and the conflicting claims of the different shareholders to be properly and impartially adjusted, which the disruption of the *entente cordiale* that should exist among them has heretofore rendered, and now renders, wholly impossible except through the interposition of a court of equity. In this way, Mrs. Werries, if she has a claim against the corporation for moneys advanced, can have it adjudicated and established, even though the decree thus far rendered does not give her a judgment therefor. Very properly it did not do so since it would seem that that issue was not within the scope of the pleadings.

And this brings up the question of the propriety of the 4th and 6th paragraphs of the decree relating to the repayment of $280 and $731, by F. H. and Mary

A. Werries, which the decree says was paid by them out of the funds of the corporation for attorneys fees but which were for services rendered to them personally and not rendered the corporation. These elements of the decree were entirely outside of the pleadings. The petition did not pray for a general accounting but only that said defendants be required to pay back such sums as they received through the unlawful Willow Creek Coal Company contract. Nor did it ask that the said defendants be required to account for any other moneys. Since no mention was made of any expenditure of the corporate funds for private purposes or any private disposition of such funds, except through the said Willow Creek Coal Company contract, we not see how the prayer for general equitable relief could be regarded as bringing such unmentioned matters within the pleadings when there was no prayer for a general accounting. The decree therefore should have the said 4th and 6th paragraphs eliminated from it. If it is desired, the question of such expenditures and the liability of defendants to be required to repay them to the corporation may perhaps be litigated and adjusted during the pendency of the receivership, when the parties will have due notice of the issues to be raised and an opportunity to meet them. Section 3365 authorizes the receiver to sue for and recover the debts and property that may belong to the corporation.

The decree, in all other respects, is affirmed, but the cause is remanded with directions to modify same by eliminating therefrom the above mentioned paragraphs. All concur.