HANNERTY, *Appellant*, v. THE STANDARD THEATER COMPANY *et al.*

DIVISION ONE.

1. **Corporation:** FORFEITURE OF LEASE: PURCHASE BY DIRECTOR. Where a corporation holds a leasehold interest in land, with the privilege of buying the fee, an assignment of such privilege to one of the directors and his purchase of the fee by means of it are valid against the corporation where it appears that it had neither the money nor the credit to make the purchase on its own account.

2. ———: MISCONDUCT OF DIRECTORS, ACTION FOR. Where a stockholder sues to recover on behalf of the corporation property which has been lost by the fraudulent conduct of the directors, it is unnecessary for plaintiff to charge that he has requested the corporation to bring the suit, it appearing that the same directors are still in office.

3. ———: ———: SETTING ASIDE FORFEITURE OF LEASE. A corporation, whose board of directors was wholly under the control of a former director who had purchased land on which the corporation held one

hundred years' lease, permitted the lease to be forfeited for non-payment of rent. The evidence showed that the directors could, and should, have paid the rent, but intentionally permitted a forfeiture of the lease, and a consequent loss of the entire corporate property, costing at least $30,000. *Held*, that the forfeiture at the instance of a non-assenting stockholder should be set aside.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Young & Young* and *D. P. Dyer* for appellant.

(1) It is well settled that all advantages, all purchases and all sums of money received by directors in dealing with the property of a corporation belong to it, and the directors must account for the same. Perry on Trusts, sec. 207. (2) "An agent and trustee cannot unite in himself the opposite character of buyer and seller, and if he does so the profits made by him may be charged with a trust for the benefit of the principal." *Bent v. Priest*, 86 Mo. 475. (3) The directors of a corporation are liable in equity for gross frauds and breaches of trusts whereby the assets of the corporation have been wasted. *Charitable Corporation v. Sutton*, 2 Atkyns, 400. (4) The directors of a corporation are liable in equity as trustees for a fraudulent breach of trust. The primary party to sue for such a breach is the corporation, but if the corporation is under the control of the guilty directors, the stockholders may sue in their individual names. *Hodges v. Screw Co.*, 1 R. I. 1; Thompson on Liability of Officers, p. 391; *Benton v. Pomeroy*, 77 Mo. 531; *Ashton v. Ass'n*, 84 Cal. 61; *Eschweiler v. Stowell*, 44 N. W. Rep. 361; *Pike Co. v. Hammons*, 27 N. E. Rep. 487; *Albers v. Merchants' Exchange*, 45 Mo. App. 206.

*C. H. Krum* and *T. J. Rowe* for respondents.

(1) The judgment ought to be affirmed because of non-compliance with the rules on the part of the appellant. *Ebersole v. Rankin,* 13 S. W. Rep. 756; *Coleman v. Farrar,* 14 S. W. Rep. 825. (2.) Although this is a proceeding in equity, yet this court will be influenced and largely controlled by the action of the trial court. *Erskine v. Lowenstein,* 82 Mo. 301. Where the trial court has the witnesses personally before it, and there is evidence to sustain the finding, this court will not reverse such finding, unless it is clear that it ought to have been otherwise than as shown by the record. *Judy v. Bank,* 81 Mo. 404; *Snell v. Harrison,* 83 Mo. 652. In cases of conflicting evidence, as in the present case, in regard to the presence of appellant at the meeting (May 28, 1881), this court will not disturb the finding. *Ford v. Phillips,* 83 Mo. 523. (3) The petition states neither a cause of action in equity, nor a cause of action at law. It is a conglomeration both of equity and law, and upon neither theory can appellant recover. Although the distinction between forms of action is abolished; although there is neither a bill nor a declaration under the code, yet it is familiar doctrine that the difference between equity and law remains unaffected by code provisions. *Meyers v. Field,* 37 Mo. 434; *Rutherford v. Williams,* 42 Mo. 18. In the same petition, and confusedly intermingled, the appellant has united a claim for damages, by reason of the now worthlessness of his stock and a claim that the respondents should be decreed to account for profits made by them by misappropriating assets of the corporation. The one is a cause of action at law, sounding in damages. This the appellant cannot maintain. *Dewey v. Manhattan Co.,* 2 Denio, 115; *Smith v. Hard,* 12 Metc. 377; *Allen v. Curtis,* 26 Conn. 456; *Smith v.*

*Poor*, 40 Me. 415. The other is a cause of action in equity; but even this is not sufficiently stated, in that no adequate reason is averred for the institution of a suit by a stockholder, which ought to have been brought by the corporation. *Hawes v. Oakland*, 104 U. S. 450; *Memphis v. Dean*, 8 Wall. 7. (4) The main feature of the complaint of the appellant is found in the fact that the respondent, Edward Butler, purchased from the corporation the option to buy the fee in the property leased to the corporation, and under that option became the owner of such fee, and followed up his ownership by forfeiting the lease. Everything in the case centers upon this main feature. (5) The evidence shows that the appellant is merely a figurehead, and that the stock which apparently belongs to him is, in reality, the property of another. In that event, he certainly is not entitled to maintain the action. *Sparhawk v. Railroad*, 54 Pa. St. 401; *Robson v. Dodds*, L. R. 8 Eq. 301; *Bekuart v. Railroad*, 52 Barb. 662. (6) The acts complained of by the appellant were all *intra vires*, and the majority of the stockholders were as competent to dispose of the option as they would have been to ratify such disposition had it been made by the directors. *Railroad v. Harris*, 27 Miss. 537; *In re Church*, 7 S. & R. 517; *Dudley v. Kentucky School*, 9 Bush, 578; *Brown v. Boston Theater*, 104 Mass. 394.

BLACK, J.—The plaintiff is a shareholder in the Standard Theater Company, and the defendants are James Butler, Edward Butler, Jr., and Edward Sullivan, directors, and Edward Butler, Sr. The corporation is also a defendant. The petition, in general terms, prays for a decree reinstating a forfeited lease; that Edward Butler, Sr., be required to convey the fee

in the leased property to the corporation; for an accounting, and the appointment of a receiver, etc.

The Standard Theater Company was incorporated on the twelfth day of May, 1883, with a capital stock of $30,000 which stock was increased to $50,000. Edward Butler, Sr., became the owner of two hundred and forty shares and Joseph H. McIntyre became the owner of one hundred and fifty shares, of the par value of $100 each; the other one hundred and ten shares were not sold. On the fifteenth of May, 1883, the company procured a lease from John H. and Charles H. Bobb for a term of one hundred years, on a lot in the city of St. Louis, subject to various conditions. Among other things, the lessee, the theater company, agreed to pay rents for the first five years at the rate of $2,500 per annum, the rents for the first year to be paid at the end of that year and thereafter quarterly. The lease provides further that the rent for the second and each subsequent period of five years shall be fixed at six per centum per annum on the value of the ground, excluding buildings thereon, but never to be less than $2,500 per annum. Stipulations are then made concerning the appointment of appraisers, should the parties not agree upon the value of the land. The lease secures to the lessee the right to purchase the property at any time within five years next after June 1, 1883, at the price of $50,000. The lessors have the right to declare a forfeiture of the lease for the non-performance of any of the conditions, and in case of forfeiture the lessors or their assigns become entitled to the possession of the premises and buildings thereon free from any claim of the lessee or its assigns; provided, however, that no forfeiture shall be had for non-payment of rent until the same shall have been due for thirty days.

The theater company erected a building on the leased lot and conducted a theater business there. McIntyre became dissatisfied with the business, and in 1885 sold his one hundred and fifty shares of stock to the plaintiff Hannerty for $3,500. Hannerty became a director and the treasurer, and took an active part in the management of the business. At this time the directors were Edward Butler, Sr., Hannerty and James J. Butler. The latter then held ten shares of stock which had been transferred to him by his father, Edward Butler, without any money consideration paid therefor. Some time prior to the twenty-ninth of June, 1887, Edward Butler transferred ten shares of stock to his son Edward Butler, Jr., and ten shares to his clerk, Edward Sullivan. Both of these transfers were without consideration paid for the stock so assigned. The directors elected on the last-mentioned date were Edward Butler, Sr., James J. Butler and Edward Sullivan.

The following resolution was adopted at a special meeting of the stockholders held on the twenty-first of May, 1888:

"It appearing to the stockholders that the company was not in a condition to purchase said property, on motion of James J. Butler, duly seconded and carried, the right, power and authority was conferred by the stockholders on the board of directors to use their discretion in disposing of said option, and to take any action with reference to the same that they might believe to be for the best interest of the company and to do what they thought right and proper in the premises, and if they saw fit to sell and dispose of said option to any stockholder in said company who would pay the highest price for same."

The record made of this meeting shows that Hannerty was present. He testified that he received

notice of the meeting, that the meeting was called to order by Edward Butler, that he then asked Sullivan, the secretary, whether there was enough money on hand to pay the rent, that Sullivan smiled and said "No;" that he waited about two minutes longer and they said the meeting was adjourned and he left, and that no such a resolution was passed before the adjournment was proclaimed; but several of the defendants say he was present during the entire meeting. The proof, all considered, satisfies us that Hannerty was present when this resolution was adopted.

On the same day, May 21, 1888, the board of directors met and made an order transferring the company's option for the purchase of the property to Edward Butler, Sr., for the consideration of $50. At this time Edward Butler, Sr., James J. Butler and Edward Sullivan constituted the board, all of whom were present. On the same day Edward Butler, Sr., handed to the secretary his resignation as president and director, which was accepted on the twenty-eighth of the same month, and the other members of the board elected Edward Butler, Jr., to fill the vacancy. Thereupon Edward Butler, Sr., purchased the property at the price of $50,000, and received a deed therefor from the lessors and their grantees "subject to said lease and to all the covenants" therein contained. On the thirtieth of the same month, the directors entered into an agreement with Edward Butler, Sr., fixing the value of the lot at $65,000 for the period of five years beginning on the first of June, 1888, and the rental at $3,500 per annum.

The stockholders, at a meeting held on the twenty-eighth of June, 1888, elected the following directors: James J. Butler, Edward Butler, Jr., and Edward Sullivan. At this election the stock was voted as follows: Edward Butler, Sr., two hundred and ten

shares; James J. Butler, ten shares; Edward Butler, Jr., ten shares; Edward Sullivan, ten shares; James Hannerty, one hundred and fifty shares. Hannerty voted for himself but was defeated. The new board met on the same day and elected James J. Butler president, with an annual salary of $2,500, and Sullivan secretary and treasurer, with a salary of $1,200 per year.

This new board of directors failed to pay the $625 rent due on the thirty-first of May, 1888, and the $875 rent due on the thirty-first of August, 1888. In the following October Edward Butler, Sr., as lessor and owner of the land, declared a forfeiture, and thereupon obtained a judgment against the corporation by default in a forcible detainer suit before a justice of the peace. He was placed in possession with due solemnity under a writ issued upon this judgment, and the officers and agents of the corporation then became his agents in the conduct of the theater.

1. We may here dispose of that branch of the case which seeks to compel Edward Butler, Sr., to convey the reversion in the leased property to the corporation, the corporation assuming the payment of the purchase price. This relief is asked on the averments that the corporation had the means to purchase the property; but that the directors, conspiring with him, fraudulently assigned to him the company's option to purchase the fee secured by the lease. This right or option secured to the company to purchase the reversion for $50,000 was assigned to Mr. Butler on the twenty-first of May, 1888, ten days before it expired. Conceding that his will ruled the then directors, though he resigned his office of president and director a few days before he took this assignment and purchased the property from the lessors, still all this does not deprive him of the benefit of his investment. It is true direct-

ors of a corporation occupy a position of trust, and their dealings with the subject-matter of the trust will be watched with a jealous eye by the courts. Here it required $10,000 cash to make the purchase under the stipulation in the lease. The company did not have that amount of money, nor did it have the credit to raise so large a sum. The option was of no value to the company. Though we treat Mr. Butler as still being the president and a director of the corporation, still he certainly had a right to buy the reversion in the property upon which the corporation held the leasehold interest, unless the purchase deprived the corporation of some rights. As the corporation could not avail itself of this option to purchase the property, there can be no valid objection to the purchase of it by him. He purchased the property subject to the lease, and must be held to be the owner of it subject to whatever rights the corporation may have had as lessee.

2. We are next to consider that branch of the case wherein it is claimed the forfeited lease should be reinstated and the defendants required to account.

The objection is here made by the defendants that the plaintiff cannot maintain this suit because he does not aver that he first requested the corporation to institute and prosecute it. The cause of action for the violation of a corporate right accrues to the corporation and not to the stockholders, and generally the remedy must be obtained by, and in the name of, the corporation. The directors are the managing officers, and it is for them to say whether a given suit shall be prosecuted. *Slattery v. Trans. Co.*, 91 Mo. 217. There are, however, exceptions to the rule. Thus a stockholder may sue in those cases where the directors are guilty of a fraud or breach of trust, or are proceeding *ultra*

*vires.* These, at least, are some of the exceptions to the general rule. *Hawes v. Oakland,* 104 U. S. 450. Directors are liable to the corporation for a breach or abuse of their trust, and may be compelled to account for corporate funds thus abstracted or misapplied. If other persons have participated with them, such persons may be joined as defendants, and the property may be followed into their hands. But in all of these cases it must appear that the proper officers refuse to prosecute the suit, or that the corporation is under the control of persons who were parties to the fraud or abuse of trust. It is sufficient to entitle the stockholder to sue to show that the corporation is under the control of directors who are liable for the loss. *Smith v. Poor,* 40 Me. 415; *Ashton v. Dashaway Ass'n,* 84 Cal. 61; *Wayne Pike Co. v. Hammons,* 27 N. E. Rep. 487; *Hodges v. Screw Co.,* 1 R. I. 340.

"There are," says Cook, "occasions when the allegations that the stockholder has requested the directors to bring suit, and they have refused, may be omitted, since the request itself is not required. This occurs when the corporate management is under the control of the guilty parties. No request need then be made or alleged, since the guilty parties would not comply with the request; and even if they did the court would not allow them to conduct a suit against themselves." Cook on Stock & Stockholders, sec. 741. Now, the directors of this corporation are the persons who are charged with mismanagement of the corporate property. The corporation is still under their control. It was, therefore, not necessary to allege or prove a demand upon them to institute this suit. Under these circumstances such a request was not necessary.

3. We, therefore, come back to the question whether the lease should be reinstated. The substantial averments on which this relief is asked are, that

the corporation was doing a prosperous business, and had means to pay the rents as they accrued, but that the directors, James J. Butler, Edward Butler, Jr., and Edward Sullivan, by the influence of Edward Butler, Sr., failed and omitted to pay them; that they allowed a forfeiture of the lease for the purpose of defrauding the plaintiff out of his interest as a stockholder.

The first inquiry, therefore, is whether the directors could and should have paid the rents. The rents, for the non-payment of which a forfeiture was declared, became due as follows: $625 on thirty-first day of May, 1888; $875 on August 31, 1888. The forfeiture was declared by Edward Butler, Sr., about the first of the following October.

The trial court made an order upon the defendants to produce the books of account of the Standard Theater Company, from its organization in 1883, to October, 1888, and upon Edward Butler, Sr., to produce his books showing receipts and expenditures of the theater since the last-mentioned date. Pursuant to this order the plaintiff and his expert bookkeeper were allowed to examine the account books of the corporation covering a period from 1883 to, and including, 1886. The defendants then made return, to the order of the court, that the account books from 1883 to, and including, 1886 were in the possession of the plaintiff; that the defendants had no other books called for by the order; and Edward Butler, Sr., made return that he had and kept no accounts of the theater business since October, 1888.

The defendant Sullivan, called to the witness stand by the plaintiff, testified that he took the account books of the Standard Theater Company, covering the period from 1883 to October, 1888, to the blacksmith shop of Ed. Butler and son and placed them in a closet at that

place; that he did not know what had become of the missing books; and, though he kept the accounts, he could not state what the receipts and expenses were. The other defendants were also examined by the plaintiff, and their evidence is that they know nothing about the missing books. They could not state how the accounts stood for 1887 and 1888. Hannerty, the plaintiff, says he made frequent demands of Sullivan, the secretary and bookkeeper, for a statement of the finances of the company, but that Sullivan always put him off. These demands were made before the commencement of this suit. The plaintiff put in evidence, as a last resort, a copy of the bank account of the company, from which it appears a check was drawn on and paid by the bank on the last of February, 1888, for $3,500, an amount in excess of the checks as they were usually drawn. The defendants, though interrogated at length, could not give any account of this check, or for what purpose the money was used. This bank account shows a credit to the company on the twenty-second of May, 1888, of $1,526.06. This was but nine days before the installment of $625 rent became due. Of that balance, $1,029.56 was checked out on the day before the rent became due. What use was made of this money so checked out the defendants cannot say. The company seems to have had a balance to its account in bank as late as October 31, 1888. There is some other evidence tending to show that this company was doing a fair business.

The defendants were directors of this corporation and as such trustees it was their duty to keep correct accounts, and to be able to make a full and correct showing of the receipts and expenses. Instead of this we find a manifest disposition on their part to keep back and out of view the true financial condition of the corporation. We think there is but one conclusion to be

drawn, and that is this, that these directors could and should have paid these rents. It is equally clear that they intentionally permitted a forfeiture of the lease, and a consequent loss of the entire corporate property, costing at least $30,000.

Was the defendant, Edward Butler, Sr., a party to this breach of trust? To answer this question it is but necessary to recall some of the undisputed evidence. Hannerty, though holding one hundred and fifty shares of stock, was pushed aside in June, 1887. The directors elected at that time were Edward Butler, Sr., James J. Butler and Sullivan. The latter and James J. Butler each held ten shares of stock assigned to them without consideration and for the evident purpose of qualifying them to act as directors. In May, 1888, Edward Butler, Sr., resigned and his son Edward, Jr., to whom ten shares had been transferred without consideration, became a director. At this date the fee in the leased property was purchased by Edward Butler, Sr., for $50,000. This new board at once agreed with him that the property was of the value of $65,000 for the purpose of fixing rents under the lease for the second period of five years. These same three directors are again elected on the twenty-eighth of June, 1888, and they allow James J. Butler a salary of $2,500 per year for holding the nominal position of president. Sullivan had previously performed the duty of book-keeper and secretary for $7 per month, but at this time he was allowed a salary of $1,200 per annum. These liberal allowances to persons who gave but little, and were expected to give but little, attention to the business need an explanation, not given by the evidence before us. There is evidence that Edward Butler, Sr., after this election of directors, and after he had acquired the reversion in the leased land, sold his remaining two

hundred and ten shares to his son Edward, Jr., at twenty-five cents per share.

From this evidence and some other circumstances there can be no doubt that this new board of directors simply executed and voiced the will of Edward Butler, Sr. It certainly is not expected that this court can reach any other conclusion. And it is equally clear that the directors allowed the lease to be forfeited to enable him to acquire all the corporate property. It was probably supposed that the directors had a right to do this because a majority of the stockholders so dictated; but the law is not now, and it is hoped never will be, so written. It was the plain duty of the directors to protect and preserve the corporate property for the minority as well as the majority of stockholders.

The trial court dismissed the petition on final hearing. That judgment is now reversed and the cause remanded. The trial court is hereby directed to enter up a decree re-establishing and reinstating the lease. That court will also proceed to take an account of the receipts of the theater property and of the expenses of conducting the business, including as expenses rents due on the lease. The court in stating the account will go back to second of July, 1887. The order of the board of directors made on the thirtieth of May, 1888, allowing salaries will be disregarded. As the case now stands we can go no further in directing subsequent proceedings, more than to say this, that the company will be reinstated as lessee, and the defendants must account to it for all moneys received from second of June, 1887, to date of final hearing, and the court will then make such further decree as the equity and justice of the case may demand. BARCLAY, J., absent, the other judges concur.