MIKE KIRRANE, Appellant, v. R. E. BOONE ET AL.—66 S. W. (2d) 861.

Division One, December 22, 1933.

*Pendleton & Martin* and *George Brownfield* for appellant.

560

*Redick O'Bryan* and *Roy D. Williams* for respondents.

STURGIS, C.—The trial court sustained a demurrer to plaintiff's petition, who refused to plead further, and final judgment was rendered for defendants and plaintiff has appealed. The sufficiency of the petition to state a cause of action in favor of plaintiff and against defendants is the sole point at issue.

The petition states that prior to September, 1926, the Franklin State Bank was legally incorporated and engaged in the general banking business at Franklin, Missouri, and on that date, being insolvent, by action of its board of directors, it voluntarily closed its

bank and banking business and placed its assets and business in the hands of the State Commissioner of Finance, under the provisions of Section 5316, Revised Statutes 1929, who took charge of same and has proceeded to liquidate such bank under the applicable laws; the plaintiff was and is a stockholder in said bank owning three $100 shares of its capital stock of $10,000. The defendants are the directors of such insolvent bank, who were in charge of its business at and prior to its insolvency, and the plaintiff has joined as defendants the Franklin State Bank, the State Commissioner of Finance and his deputy who is in immediate charge of the liquidation of this bank. Plaintiff alleges that he brings this suit not only in his own behalf, but in behalf of the corporation and all the shareholders and creditors of the same. He alleges as a basis of his action that the defendant directors of the bank, while in charge of the same, negligently and carelessly failed and omitted to discharge their duties as directors imposed on them by law in that they failed to direct, inspect, manage, control and supervise the officers and business of the bank, but, on the contrary, permitted the cashier, F. A. Temple, to perform all the duties of all officers of the bank without supervision or examination of his transactions, and allowed him to borrow from the bank sums of money in excess of the amount the bank or its directors could so loan, and without taking any security therefor; that they negligently and carelessly permitted said Temple to loan the bank's money to insolvent persons whose insolvency was known to said directors; that said directors negligently allowed directors and officers of the bank to borrow money from the bank in excess of the amounts allowed by law to be loaned to them. Plaintiff further alleges that defendants as directors of said bank employed and put in charge of the affairs of the bank said F. A. Temple as cashier, knowing him to be young, inexperienced and incapable of managing said bank, and with such knowledge kept him in such position and allowed him complete control and management of the bank, and allowed him to loan money and extend credit to individuals without consulting the directors; that defendant directors failed to hold monthly meetings for the purpose of examining and inquiring into the condition of the finances and business of the bank; that no such meetings were held for long periods of time and when held were attended by only one or two of the directors; that no investigation was made as to the condition of the bank and the statement of said F. A. Temple as to all things was accepted without investigation; that said board of directors delegated to said Temple the right to create large obligations by the bank without ascertaining for what purpose the money so obtained was to be used or the necessity for creating such liabilities; that the directors negligently and carelessly fixed the amount of the bond

of said Temple as cashier at $5000, which sum·was·wholly inadequate to protect the said bank, and 'that such fact was known to the board of directors. Plaintiff further alleged that for a long time prior to the closing of said bank the said Temple was engaged in playing the stock and grain markets and using the funds of the said bank with which to gamble in grain and stocks; that the defendant directors knew, or could have known by the exercise of ordinary care and diligence, of the gambling activities of the said F. A. Temple, and that he was misappropriating the funds of the bank, but that ·they continued to retain him in his position of trust and responsibility; that Temple forged numerous and' sundry notes for large amounts and placed the same in the note files of the bank, at which time the said Temple took from the funds of the bank cash in amounts to correspond with said notes, and that had the directors exercised the diligence and care required by law, said notes would have been discovered to be forged and the losses to said bank could have been averted; that at the time said bank was closed said Temple was short in his accounts with the bank in the sum of $29,100, which said amount he had taken from the funds and assets of said ·bank and converted to his own use. The plaintiff then sets out in detail many specific acts of negligence on the part of defendants resulting in loss of the bank's assets and specifies in detail a large number of loans made by the bank through its cashier to named individuals and firms who are alleged to have been insolvent at the time the loans were made within the reasonable knowledge of the defendants had they given any attention or made any investigation. These alleged facts need not be here set out at greater length as defendants do not question the sufficiency of the petition in this respect. Plaintiff alleges that the losses of the bank due to and caused by defendants' neglect of their duties as directors of the insolvent bank amount to $32,188.07. The petition then closed with this declaration and prayer for relief, to-wit:

"Wherefore, plaintiff states that he has not any plain, adequate or complete remedy at law, that the directors of said corporation are parties defendant from whom recovery is sought in this suit, that the Finance Commissioner in 'charge of ·the assets and business of said corporation refuses to prosecute this suit for reasons unknown to this plaintiff.

"Wherefore, plaintiff prays to be allowed to prosecute this action for the use and benefit of all the stockholders of said corporation and all the creditors thereof; that the issues require that an examination be made of a long account and many transactions between the Franklin State Bank and the defendants herein, and therefore prays that an accounting be had of the affairs of said Franklin State Bank

and of the action and conduct of the defendants as its board of directors in connection with the matters and things hereinabove recited and that it order a reference for that purpose and to determine the liability of the respective defendants therefor; and that after having determined such liability a judgment may be entered against the said defendants respectively according to their respective liabilities, requiring them, the said defendants, to return for the use and benefit of the corporation, its stockholders and creditors the money so carelessly and negligently wasted and lost, and which was so negligently and carelessly allowed to be wasted and lost, to the said Finance Commissioner of the State of Missouri, to be by him properly disbursed according to the order of this court, and for such other general relief as the court shall deem just and proper.''

It is proper to say also that plaintiff's petition alleges that the majority of the stock of the insolvent bank is owned by the directors, who are defendants in this action; that neither plaintiff nor any minority stockholder can have any redress for the wrongs complained of within the corporation; that a large number of the larger creditors and depositors of the bank have given their consent and sanction to this proceeding; that plaintiff has requested the State Commissioner of Finance and his deputy in charge, who are for that reason made defendants herein, to bring suit on this cause of action against the defendant directors, but that they have failed and refused to do so and say that they will not bring such suit at any time.

The demurrer filed by defendants, which the court sustained, specifies, among others, these grounds, to-wit: That plaintiff's petition does not state facts sufficient to constitute a cause of action against the defendants; that the Franklin State Bank is in the hands of the Bank Commissioner and therefore the plaintiff has no capacity to sue; that the plaintiff has no legal capacity to institute and prosecute the alleged cause of action either in law or in equity; that the statutes of this State provide the means and manner of liquidating the bank and that said corporation has no capacity to sue; that the stockholders cannot be paid until all other creditors are fully paid; that the Bank Commissioner is a receiver and cannot be sued except upon an order of the court.

We agree with plaintiff's insistence in this case that a minority stockholder has a right to bring and maintain an action under certain conditions precedent against the directors of the corporation to recover, for the use and benefit of the corporation and its stockholders and creditors, moneys of the corporation lost by the directors by their mismanagement of its affairs, and which losses resulted from mismanagement, neglect of duty, carelessness, failure to perform statutory duties, and breach of trust on the part of such

directors. Some of the conditions precedent to such suit are that the stockholder bringing the same has no means of redress within the corporation itself, and, where the affairs of the corporation are in the hands of a receiver, or, as in this case, in the hands of the Commissioner of Finance for liquidation, such receiver and commissioner refuses to bring such suit after request to do so. The law in this regard as to corporations generally is stated in 14A Corpus Juris, page 154, thus: "The right of action against officers and directors to redress wrongs to the corporation is in the corporation or its representative and not in the stockholders. A suit by a stockholder to redress such wrongs must be in the right of and for the benefit of the corporation; and it may be instituted only after compliance with conditions precedent. But where the conditions precedent have been satisfied, the mere fact that plaintiff is a stockholder, rather than a creditor, does not preclude the maintenance of the action. *A stockholder is allowed to sue only to prevent a complete failure of justice.* He cannot sue for the corporation where the corporation or its receiver has no right of action." The conditions precedent to the maintenance of such a suit by an individual stockholder are stated in 14A Corpus Juris at pages 157, 158, thus: "A suit by a stockholder against officers or directors to redress wrongs to the corporation may be instituted only where there has been a demand upon, and a refusal to sue by, the corporation or where the circumstances are such that a demand would be futile or useless, as where the directors or officers sought to be sued are in control of the corporation." As applied particularly to banks and banking, the law is stated in 7 Corpus Juris, 569, sections 177 and 179, thus: "An assignee or receiver can proceed against officers or directors for their negligence; and if he refuses to do so, the stockholders and the creditors can usually proceed themselves, making the bank a defendant, although there is also authority for the view that the creditors cannot maintain such an action. . . . Where the assets of a bank are in the hands of a receiver or assignee, a demand on such officer that he bring suit and his refusal to do so are considered to be a condition precedent to a suit by the creditors or by the stockholders." And at page 571, section 183 of 7 Corpus Juris, this is said: "Some of the depositors and the stockholders of a bank may, on behalf of all of them, bring suit to charge its directors, as its managing officers, with sums lost through their negligence and mismanagement, where the bank is in the hands of a receiver, and he refuses to bring the suit; and in such suit it is proper to join the receiver as a defendant."

The law in this State is in accord with the law as above stated with some exceptions as to who may maintain the suit and the conditions precedent. [Thompson v. Greeley, 107 Mo. 577, 17 S. W. 962; Hann-

erty v. Standard Theater Co., 109 Mo. 297, 305, 19 S. W. 82; Slattery v. Transportation Co., 91 Mo. 217, 4 S. W. 79; Caldwell v. Eubanks, 326 Mo. 185, 30 S. W. (2d) 976; Vogeler v. Punch, 205 Mo. 558, 103 S. W. 1001; Hall v. O'Reilly Realty & Inv. Co., 306 Mo. 182, 196, 267 S. W. 407; Dorrah v. Pemiscot County Bank, 213 Mo. App. 541, 256 S. W. 560.] A case frequently cited with approval is Hawes v. Oakland, 104 U. S. 1. c. 460, 26 L. Ed. 827.

Union Natl. Bank v. Hill, 148 Mo. 380, 392, 49 S. W. 1012, was a suit by creditors (depositors) of an insolvent bank in the hands of an assignee, who had refused to bring the suit, against the directors. This court there ruled: "It would therefore seem that the defendant directors were remiss in the discharge of their duties in not knowing, when it was their duty to know, that loans were being made by the bank in violation of the statute, and to persons in amounts larger than its capital. . . . And while it is not pretended that they misappropriated any of the funds of the bank, or that they were guilty of any fraudulent conduct, they were guilty of gross neglect in leaving the entire management of the business of the bank to the cashier. . . . The directors having been guilty of negligence in the discharge of their duties by reason of which losses were sustained by the bank, they were liable in an action at law to the corporation while a going concern for losses due to such loans, or to the assignee after the assignment, or in equity to the stockholders, in the event of the declination of the assignee to bring suit." And at page 394 this is added: "If then an action can be maintained by a receiver of an insolvent bank against its directors for losses sustained by the bank because of their failure to exercise ordinary care and diligence in the management of the business of the bank, for like reason an assignee may do so, because by reason of the assignment he succeeds to all interests and assets of the bank. So it has been held that if the assignee refuse to sue, the stockholders, who are the real parties in interest, may maintain an action in their own names, making the corporation a defendant." It was, however, ruled in that case that the right of a stockholder to maintain such action is based on the fact that stockholders bear a fiduciary relation, that of trustee, to the bank, and as the relation of creditors and depositors to the bank is that of debtor and creditor only, such an action cannot be maintained by persons who are merely creditors or depositors of such bank. [Fusz v. Spaunhorst, 67 Mo. 256.] The allegation of the present petition that a large number of the larger depositors of the bank, they being mere creditors, consent to and sanction this suit adds nothing to the plaintiff's right to maintain the same.

In reading the cases on this subject it will be found that the principle is dominant throughout that in order to permit stock-

holders to maintain a suit of this character against the directors of the corporation for misfeasance or malfeasance of their duties to the corporation, it must be shown that otherwise there is no available remedy and that the complaining suitor has exhausted all means in his power to have the action brought by the corporation itself or those standing in its place and having a right to represent it. To maintain the suit himself, though for the benefit of the corporation, its stockholders and creditors, such remedy must be the last resort. In Caldwell v. Eubanks, 326 Mo. 185, 30 S. W. (2d) 976, this court quoted with approval from Vogeler v. Punch, 205 Mo. 558, 575, 103 S. W. 1001, this statement of the law: "In such cases the minority would be remediless if the courts of equity did not open their doors to them. But courts of equity cannot assume the management of all the corporations in the country, and if they were to open their doors to every dissatisfied or dissenting stockholder, in cases where he should fail to disclose facts making it clear that no redress could be had through regular corporate action, litigation of this kind would be endless. . . . It is therefore a settled principle of equity jurisprudence that before a court of equity will open its doors to a single stockholder, although he comes, as he must, not only on behalf of himself, but also in behalf of all the other stockholders, to an inquiry into grievances of this kind, he must show that there is *no other road to redress;* and he does not show this, unless he shows that all remedies within the corporation itself have been exhausted." And applying this statement of the law to the facts of that case, the court further said: "In cases where a stockholder fails to obtain corporate action through the board of directors, the general rule is that he should seek such action *by the stockholders as a body,* unless the facts be such that he could not do so, or it would be unreasonable or useless to require it. In cases where the directors own a majority of the stock, a request that stockholders sue the directors would be a request that they sue themselves, a thing the law does not require. . . . They (directors) had no authority or right to bring the suit themselves without first exhausting all remedies within the corporation, which included a request that the stockholders bring the suit."

In Albers v. Merchants' Exchange of St. Louis, 45 Mo. App. 206, 218, an individual stockholder brought suit against the directors of the corporation, and the court said: "We are of opinion that the foregoing petition fails to disclose a legal right in the plaintiff to maintain this action, for the reason that it fails to state facts from which the conclusion can be drawn, that the plaintiff and the other objecting members have exhausted all the means in their power to secure a redress of the grievances complained of, by the corporation itself, and through corporate action. . . . It is, therefore, a settled

principle of equity jurisprudence, that before a court of equity will open its doors to a single stockholder, although he comes, as he must, not only on behalf of himself but also in behalf of all the other stockholders, to an inquiry into grievances of this kind, he must show that there is no other road to redress; and he does not do this, unless he shows that all remedies within the corporation itself have been exhausted. . . . But a request to the directors to bring the appropriate action is not the only mode by which the shareholders may obtain redress through the appropriate corporate action. In many cases it will not be enough for him to show that he has made such a request and that it has been refused; but he must exhibit a state of facts from which the court can conclude that he has exhausted all reasonable efforts to induce redress through an action in the corporation itself. . . . If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the manner of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.'' And it is held in one case at least that whenever the corporation whose directors are to be sued for dereliction of duty is yet a going concern, the complaining stockholder should first seek the appointment of a receiver, if that can be done, who ''will stand invested with authority to sue for all demands and debts due the company.'' [Slattery v. Transportation Co., supra.]

In this case the demurrer admits that plaintiff has to a large extent exhausted his remedy and complied with the conditions precedent in maintaining this action where same would avail anything. The bank is insolvent and its board of directors has ceased to function and is without power to do so. They are the ones to be sued and could not, if they would, sue or cause themselves to be sued. They own a majority of the capital stock. The assets and business of the bank is in the hands of the Commissioner of Finance and he, as statutory receiver, is vested with power to sue and be sued and represents the bank in all legal or equitable proceedings. He has been requested to and refused to bring this or any like suit. Plaintiff claims to be in the position of the rich young ruler spoken of in the Scriptures who sought to know what he should do to inherit eternal life and on being told the conditions precedent confidently said, ''All these have I kept from my youth up;'' but there was one thing lacking. As we have said, the Franklin Bank, whose directors are sued, became insolvent and its business and assets are in the hands of the Commissioner of Finance under the provisions of Article I, Chapter 34, Section 5282 et seq., Revised Statutes 1929. As has several times been held by this court, such statutes provide a complete and ex-

clusive scheme and method of procedure to liquidate insolvent banks. Koch v. Missouri-Lincoln Trust Co. (Mo.), 181 S. W. 44, where the court said: ''The intent of that act to provide an exclusive system for winding up the affairs of banks cannot be doubted. . . . This is a sufficient epitomization of the act to show that it is, and was intended to be, a complete scheme and system for winding up the affairs of insolvent banks and trust companies in the condition described in the act. The fact that the statutory method is complete, and that the act specifically declares its purpose to be the establishment of a state banking department, 'which shall have charge of the execution of the laws relating to banks, private banks, trust companies, etc.,' necessitates the conclusion that the statutory method is exclusive, and that proceedings for receiverships of such institutions must pursue the statutory method.'' In Commerce Trust Co. v. Exchange Bank, 332 Mo. 979, 61 S. W. (2d) 928, 930, the court said: ''The statute relative to the department of finance and to banking institutions was designed to and does provide a complete and exclusive scheme for the liquidation of insolvent banks and the distribution of their assets. [State ex rel. Becker v. Farmers Exchange Bank of Gallatin, 331 Mo. 689, 56 S. W. (2d) 129, 132; Bowersock Mills & Power Co. v. Citizens' Trust Co. (Mo. App.), 298 S. W. 1049.]'' The method provided for liquidating insolvent banks is by and through the Commissioner of Finance, as statutory receiver, under the supervision of the circuit court where the bank is located. [State ex rel. Songer v. Fidelity & Deposit Co. (Mo.), 53 S. W. (2d) 1036, 1040.] █ While his powers and duties are in general terms prescribed and conferred by statute, the performance of same is under the supervision and direction of the circuit court. Sections 5316 and 5319, Revised Statutes 1929, provide for the Commissioner of Finance taking possession of insolvent banks. Section 5330 provides that the commissioner, upon taking possession of the property and business of such corporation, is authorized ''to liquidate the affairs thereof and to do all acts and to make such expenditures as in his judgment are necessary to conserve its assets and business. He shall proceed' to collect the debts due,'' sell or compound all bad or doubtful debts, compromise claims, other than deposit claims, upon such terms as the court shall direct, and may sell or dispose of any or all of the property of the bank. Section 5332 provides that he may prosecute and defend all actions and legal proceedings necessary in the performance of his duty. Section 5341, Revised Statutes 1929, expressly provides for the bringing of suits like the present one by the Commissioner of Finance. It reads: ''At any time while the commissioner is in possession of the property and business of any such corporation, he may within six years after the cause of action has accrued, institute

and maintain in his name as finance commissioner against its directors, trustees, managers or officers, or any of them, any action or proceeding which is *vested in such corporation or in the stockholders or creditors thereof.*"

The holding of this court in Ivie v. Bailey, 319 Mo. 474, 5 S. W. (2d) 50, that the statute last quoted does not affect the right of a depositor of an insolvent bank to maintain a suit direct against an officer or director of such bank for receiving or assenting to the reception of the deposit, knowing such bank to be in failing circumstances, does not touch the question here presented, for the reason that the liability of the assenting director to the wrongful reception of the deposit is statutory and is to the director individually and not to the bank as such for the benefit of all the creditors and stockholders, as is the liability, if any, of the directors sued in this case.

Much might be said in favor of the proposition that our broad and comprehensive statutes relative to liquidating insolvent banks by and through the Commissioner of Finance under the direction of the courts vests in the Commissioner of Finance the sole and exclusive right and discretion to bring and maintain suits against negligent directors such as this one and abolishes the common-law remedy of suits by individual stockholders after exhausting every other means of obtaining redress. Not only was it intended by this statute to provide an exclusive method of winding up the business affairs of an insolvent bank, but to provide that such be done by a disinterested public officer selected for his fitness to do such work and clothed with ample and plenary powers in so doing, thus guarding against local interests and favoritism. It is also evidently intended to liquidate insolvent banks speedily and with little expense and to avoid delay awaiting the outcome of doubtful litigation such as might be occasioned by suits like the present one. To this end the commissioner is given power by Section 5330, Revised Statutes 1929, to compound or compromise all bad or doubtful debts and claims due the bank.

However, it is not necessary for us to decide that question in the present case. There is one remedy which the plaintiff stockholder did not exhaust before bringing this action in his own name. The Commissioner of Finance, while not an ordinary receiver appointed by court and deriving his powers and duties from such court, is, as we have ruled, a statutory receiver performing his duties under the supervision and direction of the circuit court and is specifically empowered to bring suits of this character. We think there is no doubt but that the proper court has power to direct the Commissioner of Finance to bring a suit like this one and could have made an order to that effect at the suggestion or on motion of any interested party. The plaintiff here could have by motion asked the court to have made

an order directing the Commissioner of Finance to bring this suit and a refusal to do so would have subjected him to liability on his bond. Whether or not the plaintiff could, on refusal of the court to order the Commissioner of Finance to do so, or on refusal of the commissioner to obey the order, bring and maintain this suit, we need not decide:

In Cunningham v. Wechselberg, 105 Wis. 359, a stockholder of an insolvent building and loan association was denied the right to maintain an action against the directors for losses occasioned by their carelessness, negligence and inattention to duty, where it appeared that a receiver had been appointed in a "winding-up proceeding," who by statute had power "to take charge of the property and effects of such corporation, to collect, sue for, and recover the debts and demands that may be due and the property that may belong to such corporation, and to possess in all respects the authority of receivers in other cases, subject to control of the court. The receiver, under direction of the court, becomes invested with the rights and privileges of the corporation as to the control of its assets and rights of action. The court, in its discretion, may direct claims in favor of the corporation to be sued for by the receiver, or compromised or settled, or otherwise disposed of, as shall seem best for those interested in the estate." The court then held: "The affairs of the association being in the hands of the court in a winding-up proceeding, the plaintiff, as a stockholder interested in the assets, would have an undoubted right to petition the court to direct the receiver to take proper steps to collect from the defendants the value of any money or property lost to the corporation by their neglect or malfeasance. *Until the court has been appealed to in this regard,* no stockholder can maintain an independent action to enforce rights of the corporation against defaulting officials."

In McTamany v. Day (Idaho), 128 Pac. 563, it appears that an insolvent bank was placed in the hands of a receiver in a proceeding had by the State Bank Commissioner, and the statute provided that such receiver "is authorized to proceed and marshal and collect all the assets of the bank, and distribute them *pro rata* among the creditors or as the court may direct." A suit was brought by a creditor of the bank against the directors, alleging as grounds for recovery the dereliction of the directors in "(1) the illegal payment of dividends; (2) the making and publication of false reports; (3) the unlawful permitting of excessive loans; (4) that the plaintiff made deposits in the bank while it was insolvent under circumstances whereby the defendants could have known of the insolvency of the bank had they exercised proper diligence. In case of a recovery on all or either of said grounds, the amount recovered is an asset of the

bank, and in this case any action brought to recover the same should be by the receiver.'' The court there said: ''After such corporation is placed in the hands of a receiver, it is the duty of the receiver as the representative of all concerned, to proceed and collect such illegal dividends and all other claims of such corporation due said bank by contract or caused by the fraud, gross negligence, or willful breach of duty of the officers thereof, so that whatever may be recovered may be properly distributed among all of the creditors of the bank as the law or court may direct. [See Tiffany on Banks and Banking, p. 304 et seq.] If the receiver fails or refuses to do his duty in this regard, that matter *ought to be called to the attention of the court, and the court ought to compel him to do so* or remove him. The trial court *did not err in sustaining said demurrers and entering judgment of dismissal.*'' The court, under our statute, could not discharge the Commissioner of Finance as statutory receiver for refusing to obey its order to bring suit on the cause of action now involved, but the commissioner would disobey such order at his peril for neglect of duty. This rule of law is in accord with the court's ruling in Thompson v. Greeley, 107 Mo. 577, 17 S. W. 962, where the court was dealing with a case like the present one arising under the law prior to our present statutes for liquidating insolvent banks. That suit was by the receiver against the defendants as directors of an insolvent bank for negligence and failure to discharge their duties. Referring to the case of Gill v. Balis, 72 Mo. 429, the court said: ''In that case, however, the court held that statutory authority to make 'all orders and decrees needful' was sufficient to authorize the court to *order* the receiver to sue the stockholders for unpaid subscriptions for stock. It is clearly stated that such right existed without reference to the statute. . . . As the statute makes no provision either limiting or enlarging the authority of the court in directing the manner in which the receiver should proceed in the performance of his duties, the court had general jurisdiction to make all orders and decrees necessary for subjecting all the property and assets of the corporation to the payment of its debts, and we think the order directing him to prosecute suits against the directors for any liability to the corporation valid.'' In this case the petition does not allege that the plaintiff asked or that the circuit court refused to order and direct the Commissioner of Finance to bring and prosecute this suit, and without deciding the effect on plaintiff's right to maintain this suit of the court's refusal to make such order or of the commissioner's refusal to obey the same in good faith, we hold that without such showing the plaintiff, as an individual stockholder, was without power

or authority to do so. The demurrer was properly sustained and the judgment is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.